*Decision will be entered under Rule 50.*

HELEN SCOTT FAIRBANKS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12979.    Promulgated July 31, 1950.

*Harrison Harkins*, *Esq.*, for the petitioner.
*E. A. Tonjes*, *Esq.*, for the respondent.

OPINION.

HARRON, *Judge:* The question in this proceeding is whether payments received by the petitioner in 1942 and 1943 from Indianapolis

News Publishing Co. and from the trustees of the *inter vivos* trust established by petitioner's former husband are taxable to her. The question involves the application of sections 22 (k), 171, and 162 (b) of the Internal Revenue Code.

The respondent's contentions in this proceeding are in accord with G. C. M. 25999, 1949–1 C. B. 116, and with the conclusions of the United States Circuit Court of Appeals for the Ninth Circuit in *Laughlin's Estate* v. *Commissioner*, 167 Fed. (2d) 828.

We come to the conclusion that the question is governed by the *rationale* of *Laughlin's Estate*, *supra*. The facts in this proceeding closely parallel the facts in *Laughlin's Estate* in which the administrator of the estate sought deduction for the taxable year 1942 under section 162 (b) of the Internal Revenue Code of monthly payments which it made in 1942 to the divorced wife of its decedent. In both *Laughlin's Estate* and this proceeding, the parties were divorced prior to 1942, which is the first year to which the provisions of section 22 (k) of the Internal Revenue Code apply; the divorced wives survived their former husbands who died prior to 1942; agreements had been made by the divorced husbands, incident to divorces, that periodic payments would be made during the lives of the divorced wives to them, and the agreements were binding upon the heirs, executors, or administrators of the deceased, divorced husbands.

The conclusion of the Circuit Court of Appeals in *Laughlin's Estate* was founded upon the premise that periodic payments which were made during 1942 by the administrator of the estate of Homer Laughlin, deceased, to his divorced wife, Ada Laughlin, were the type of payments which are described in section 22 (k). The court said, *inter alia*, "that the text of the statute makes no reference to 'alimony' as such, nor to payments for support and maintenance, but seems to encompass all payments made under a decree of divorce or separation in discharge of a legal obligation imposed under a decree of divorce because of the marital relationship." The court considered the provisions of sections 162 (b) and 171 (b) of the Code; noted that Ada Laughlin was a beneficiary within the scope of section 162 (b) because of the provisions of section 171 (b), and concluded that section 162 (b) "clearly contemplates a deduction by an estate of the periodic payments made to a wife as described in section 22 (k)."

The only logical inference to be drawn from the conclusions of the Circuit Court of Appeals in *Laughlin's Estate* is that periodic payments of the type described in section 22 (k) are taxable to the surviving wife of a deceased, divorced husband, under such facts as were present in that case.

The payments which were to be made to petitioner subsequent to her divorce under the agreement of November 22, 1938, which was

adopted by the District Court of Nevada in its decree of November 26, 1938, clearly were the type of payments which are described in section 22 (k) of the Code. See *Tuckie G. Hesse*, 7 T. C. 700; *Robert Wood Johnson*, 10 T. C. 647; *George T. and Ruth L. Brady*, 10 T. C. 1192.

The agreement was binding upon "the heirs, executors and administrators and assigns" of Fairbanks. The stock of the Indianapolis News Publishing Co. was assigned and transferred to the trustee of the *inter vivos* trust created by Fairbanks, but the stock was subject to the lien imposed upon the stock by the terms of the 1938 agreement which was adopted in the divorce decree. The Publishing Company made payments to petitioner out of the dividends on the stock which was originally pledged to secure the payments.

Petitioner does not deny any of the facts set forth above. Petitioner seeks to avoid the impact of section 22 (k) by making the contention, in substance, that the agreement of November 22, 1938, has no bearing upon and is not material to the question to be decided, and has no relation to the payments which the petitioner received in 1942 and 1943. The petitioner's argument revolves about the agreement which was entered into on July 5, 1941, by herself, by the executor and by the administrator of Fairbanks' estate, and by the trustees of the *inter vivos* trust, in settlement of petitioner's claim against Fairbanks' estate, which claim was predicated upon her right to receive monthly payments under the decree of divorce which adopted the agreement of November 22, 1938. A controversy had arisen over the *amount* of the monthly payments, after Fairbanks' death, apparently because of the provisions in the 1938 agreement which made the *amount* of the payments subject to variations in proportion to the decrease below or the increase above Fairbanks' income of $40,000. The District Court of Nevada had reserved jurisdiction to increase or decrease the amount of the monthly payments provided for in the agreement to the extent of the manner provided therein. Petitioner has not acquainted us with the nature of her controversy with the executor and administrator of Fairbanks' estate and so we must supply a reasonable explanation, as stated above.

Consideration has been given to petitioner's argument with respect to the agreement of July 5, 1941, under which petitioner's claims for the monthly payments provided for by the 1938 agreement for the rest of her life were settled. But we are unable to agree that the 1941 agreement should be construed to be wholly apart from the 1938 agreement. Petitioner's argument presents a technical question which we believe is irrelevant and immaterial. The July 5, 1941, agreement refers, throughout, to the 1938 agreement, and clearly carries out the substance of the 1938 agreement. The 1941 agreement served to clarify the matter of how the survivors of Fairbanks, those who were

bound to follow the 1938 agreement, as the heirs, assigns, executor and administrator of Fairbanks' estate and who were bound to continue making the payments to petitioner for the remainder of her life, should proceed. The 1941 agreement clarified the matter of the *amount* of the payments to be made under the 1938 agreement, the petitioner having survived Fairbanks. For example, it was provided in the 1938 agreement that petitioner would receive monthly payments in the amount of $1,250, subject to increase or decrease depending upon whether Fairbanks' income increased above $40,000 or fell below that amount. The July 5, 1941, agreement, referring to the 1938 agreement, provided that petitioner would receive $1,500 per month during the balance of 1941, and that thereafter the monthly payments could not exceed $1,500, and that after December 31, 1941, the trustees of the *inter vivos* trust should ascertain the amount of the trust income for each preceding calendar year, and fix the amount of monthly payments in the same proportion to the net income of the trust for the preceding calendar year as the proportion of $1,250 is to $40,000.

The answer to petitioner's argument is that the 1938 and the 1941 agreements are to be read together. It was provided in the 1938 agreement that each party bound his "heirs, assigns, administrators and personal representatives" to execute, at any time all agreements required for the purpose of giving full effect to the agreement. Our conclusion is that the 1941 agreement supplemented the 1938 agreement, and made provision for carrying out the chief provision thereof, i. e., the making of payments to petitioner for the remainder of her life. It did not alter the *substance* of the 1938 agreement. On the contrary, it provided for the continued carrying out of that agreement by those who were by its terms obligated to continue to make monthly payments to petitioner under Fairbanks' agreement that she would receive payments for life.

Since the 1938 agreement was incident to the divorce of petitioner from Fairbanks, and since the payments provided for by the 1938 agreement were precisely the type described in section 22 (k) of the Code, the payments received by petitioner in 1942 and 1943 were not rendered any different merely because those who were bound to carry out the provisions of the 1938 agreement after the death of Fairbanks agreed upon the *method of carrying out that obligation.* The obligation which the trustees met in 1942 and 1943 in making the payments to petitioner which are in dispute here, were in discharge of a legal obligation imposed by the decree of divorce of the District Court of Nevada because of the marital relationship of Fairbanks with petitioner.

It is held that the amounts in question which were received by petitioner in 1942 and 1943 are includible in her taxable income under

section 171 of the Code, and the respondent's determination is sustained.  Cf. *Estate of Sarah L. Narischkine,* 14 T. C.

Petitioner has made other contentions.  All of them have been considered, but we believe it is unnecessary to discuss each one in view of the above holding.  Petitioner has advanced an argument that the provisions of section 22 (k) are unconstitutional.  However, the petition did not raise that question, and no facts were alleged in the petition which, if proved, would rebut the presumption of constitutionality.  See *Heald* v. *District of Columbia,* 259 U. S. 114, 123; *United States* v. *Butler,* 297 U. S. 1, 67.  We do not, therefore, decide the question of constitutionality.

Under the holding made under the issue presented, certain adjustments must be made under Rule 50.

Reviewed by the Court.

*Decision will be entered for the respondent.*