JOSEPH J. LERNER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21623. Promulgated September 29, 1950.

*I. Herman Sher, Esq.,* and *Martin A. Roeder, Esq.,* for the petitioner.

*Sheldon V. Ekman, Esq.,* for the respondent.

380

OPINION.

BLACK, *Judge:* The petitioner contends that he is entitled, under section 23 (u) [1] of the Internal Revenue Code, to a deduction in each of the taxable years 1942, 1943, and 1944, for the payments made to his wife Edith under the separation agreement. The allowance of the deduction turns upon the question whether or not the payments were includible in the gross income of the wife under section 22 (k). [2]

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

* * * * * * *

(u) ALIMONY, ETC., PAYMENTS.—In the case of a husband described in section 22 (k), amounts includible under section 22 (k) in the gross income of his wife, payment of which is made within the husband's taxable year. If the amount of any such payment is, under section 22 (k) or section 171, stated to be not includible in such husband's gross income, no deduction shall be allowed with respect to such payment under this subsection.

[2] SEC. 22. GROSS INCOME

* * * * * * *

(k) ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. This subsection shall not apply to that part of any such periodic payment which the terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children of such husband. In case any such periodic payment is less than the amount specified in the decree or written instrument, for the purpose of applying the preceding sentence, such payment, to the extent of such sum payable for such support, shall be considered a payment for such support. * * *

Petitioner contends first that the payments in question made by him to his wife during the taxable years come within the provisions of section 22 (k) as they were in discharge of a "legal obligation" which was "imposed upon or incurred by" him under the decree of divorce. In support of this contention he argues (a) that the decree of divorce adopted by reference the alimony provisions of the separation agreement, and (b) that the alimony payments herein were in discharge of a legal obligation under the decree of divorce within the meaning of section 22 (k) because as a result of the divorce decree he incurred an obligation under New York law, to pay alimony to his former wife even if the divorce decree· made no provision with respect thereto.

We shall first consider whether the decree of divorce adopted by reference the alimony provisions of the separation agreement. An incorporation by reference is the method of making one document become part of another by referring to it in such a manner as to adopt it. Black, Law Dictionary. The facts show that neither the findings of fact and conclusions of law of the official referee nor the divorce decree incorporated the separation agreement by reference or mentioned the alimony payments provided for therein. The testimony with reference to the separation agreement taken before the referee established only the existence thereof providing for the payments to Edith which survived the divorce and that no alimony was required to be fixed. We do not think that such a reference to the separation agreement at the hearing before the referee has the effect of incorporating the separation agreement in the divorce decree.

Petitioner argues in support of contention (b) above that since he was the unsuccessful defendant in the divorce action in· New York and by reason of the divorce decree he was under the law of New York legally obligated to support his former wife which he fulfilled by making the payments provided in the separation agreement, and hence these payments were in discharge of a legal obligation imposed upon or incurred by him under the decree. He cites in support of this contention section 1170 of the New York Civil Practice Act; *Kyff* v. *Kyff*, 286 N. Y. 71, 35 N. E. (2d) 655; *Wimpfheimer* v. *Wimpfheimer*, 262 App. Div. 304, 29 N. Y. S. (2d) 102; *Goldman* v. *Goldman*, 282 N. Y. 296, 26 N. E. (2d) 265; *Galusha* v. *Galusha*, 138 N. Y. 272, 33 N. E. 1062. In New York, however, a husband and wife may by contract agree upon the amount which the husband shall pay in satisfaction of his marital obligation for the support of his wife and the courts will not interfere with such a contract, and so long as it remains unimpeached the court will not compel the husband to pay to the wife for her support a sum greater than she agreed to accept, unless the amount agreed upon is plainly inadequate. *Galusha* v. *Galusha, supra;*

*Goldman* v. *Goldman, supra; Kyff* v. *Kyff, supra.* Cf. *Commissioner* v. *Murray*, 174 Fed. (2d) 816. Such a contract is enforceable only by those sanctions which are available to the promisees in all contracts. In *Commissioner* v. *Murray, supra*, the court pointed out the difference between a contract which a husband and wife have entered into voluntarily providing for the support by the husband of the wife upon their separation and an agreement which has been embodied as part of a court decree granting a divorce. Said the court:

* * * In New York spouses who have already separated may by agreement fix the alimony which the husband must pay in discharge of his marital obligations, and, the contract will be conclusive upon them, and invulnerable except to those attacks to which any contract is vulnerable. Nevertheless, it is only a contract, and as such it is enforceable only by those sanctions which are available to the promisees in all contracts. On the other hand, if its terms are incorporated in a matrimonial decree, they may be enforced by the much more drastic sanctions which such decrees carry, and they become "legal obligations * * * under such a decree"—that is a decree in "a decree of divorce or of separate maintenance." * * *

Petitioner's obligation for the payments herein was not a legal obligation under the divorce decree but arose under the separation agreement and as pointed out in *Commissioner* v. *Murray, supra*, was contractual in nature. Section 22 (k) provides that in order for the payments to be included in the wife's gross income, and hence deductible by petitioner under section 23 (u), they must discharge a "legal obligation which * * * is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or settlement." Thus the periodic payments come within section 22 (k) only if made under a "decree" of divorce or separate maintenance or under a written instrument "incident" thereto. Such has been the consistent construction given this section by the courts. *George D. Wick*, 7 T. C. 723 aff'd. 161 Fed. (2d) 732: *Robert L. Daine*, 9 T. C. 47, aff'd.. 168 Fed. (2d) 449; *Smith* v. *Commissioner*. 168 Fed. (2d) 446: *Terrell* v. *Commissioner*, 179 Fed. (2d) 838. Since petitioner's obligation for the payments arose under the separation agreement and not under the "decree" they do not come within the provisions of section 22 (k), unless they were made under a written instrument "incident" to such decree.

Petitioner's second contention is that the petitioner's obligation to pay alimony to Edith was "imposed upon or incurred by" him "under a written instrument incident to" the divorce. In support of this contention he maintains that the separation agreement was "incident to" the petitioner's divorce by reason of (a) the facts and circumstances under which it was executed and (b) by its incorporation into the divorce proceeding by the referee. In affirming *Benjamin B. Cox*, 10 T. C. 955, the Third Circuit pointed out that section 22 (k)

"envisages a situation in which the agreement between the husband and wife is part of the package of divorce." *Cox* v. *Commissioner*, 176 Fed. (2d) 226.

We do not think that under the facts and circumstances herein the separation agreement was "part of the package" of a divorce. The facts show that at the time the petitioner and his wife separated in 1934, there was no discussion about the possibility of a divorce. After their separation petitioner and Edith did not see each other, except for an accidental meeting at the bedside of one of their children who was ill. After approximately two years of separation Edith retained counsel who commenced negotiations with counsel for petitioner with respect to formal provisions for Edith's support which culminated in the separation agreement. During the negotiations which led up to the separation agreement, petitioner and his wife did not meet and all negotiations were carried on by counsel. Edith's counsel testified that at the time the separation agreement was entered into he had not been retained for the purpose of instituting an action for divorce, nor had divorce been discussed with his client, with petitioner or with petitioner's counsel. The evidence also shows that the action for divorce was not instituted until a year after the separation agreement was entered into. It is no doubt true that after petitioner and his wife had been separated for two years that the possibility of divorce had occurred to them, but the possibility of divorce at some unspecified time is a far different thing from the anticipation of divorce by both parties at the time of the execution of the separation agreement which the statute requires in order that the payments under the separation agreement be considered "incident" thereto.

The cases of *Jessie L. Fry*, 13 T. C. 658; *George T. Brady*, 10 T. C. 1192, and *Thomas E. Hogg*, 13 T. C. 361, cited by petitioner in support of his contention, are distinguishable from the facts herein, for in each of them our Court found some fact which indicated that a divorce was contemplated by the parties at the time the separation agreement was entered into. In the recent case of *Floyd W. Jefferson*, 13 T. C. 1092, we held that a certain letter which the husband wrote to his wife on May 20, 1941, was an agreement "incident" to the divorce which was subsequently granted to the husband by a Nevada court. In that case we said:

As regards petitioner's contention (b) above, it is clear from all the facts and circumstances, without an enumeration of all of them, that the provisions of the letter of May 20 for the support and maintenance of his then wife were "incident to" the divorce. The letter itself so shows on its face, where it states: "* * * I now confirm, as I promised you on our trip that I would, that if the divorce is granted, I am bound to pay * * *" the periodic amounts of at least $6,000 per annum or a larger amount if it should for any reason be required.

As we have already stated, we are unable to make a finding that the

written agreement entered into by petitioner and his wife Edith on October 20, 1936, was "incident" to a divorce contemplated by them. We conclude, therefore, that under the facts and circumstances herein the separation agreement was not "incident to" the divorce within the meaning of section 22 (k).

Petitioner further argues that the separation agreement was "incident to" the petitioner's divorce by reason of an incorporation into the divorce proceedings by the referee of a reference to it as has been set out in our findings of fact. The testimony with respect to the separation agreement before the referee only established that there was brought to his attention the existence of a written separation agreement which provided for suitable payments to petitioner's wife for her support and maintenance and which survived the divorce. We do not think that the reference to the separation agreement before the official referee has the effect of making the separation agreement "incident to" the divorce within the meaning of section 22 (k).

We hold, therefore, that the payments herein by petitioner during the taxable years were not in discharge of a legal obligation which was imposed upon or incurred by petitioner under the decree of divorce or under a written instrument incident to such divorce within the meaning of section 22 (k). It follows that the payments herein are not deductible by petitioner under section 23 (u) of the Internal Revenue Code.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

HARRON, *J.*, dissenting: The question in this proceeding is largely a question of fact, and it appears that there is room for differences of opinion on the question of whether the petitioner and his wife adopted, at the time of their divorce, the agreement of October 20, 1936, as the agreement under which the petitioner would provide for the support of his wife after the contemplated divorce. There was a separation agreement and a separation, both of which occurred about one year prior to the filing of a petition for divorce by the petitioner's former wife. Also, a divorce was not discussed at the time the separation agreement was executed. The agreement was to continue during the life of Mrs. Lerner and was not to be affected by any decree of divorce. Nevertheless, when the divorce proceedings were in progress before the official referee, the petitioner was asked by the referee whether he was supporting his wife and whether the support agreement would survive the divorce. To this question the petitioner answered in the affirmative. I think that the petitioner and his wife clearly adopted the support agreement at the time of the divorce as the agreement which would provide the alimony which, it appears, the petitioner's wife

was entitled to ask for at the time of the divorce. In this situation it seems to me to be too strained a construction of the facts to conclude that the support agreement was not incident to the divorce.

It may be a factor in the conclusion of the majority of the Court that the petititoner agreed in the agreement of October 20, 1936, that the support payments which he would pay to Mrs. Lerner would be free and clear from any state or Federal tax in existence or enacted thereafter. This element should not, in my opinion, weigh in either direction. It is simply a contractual provision which calls for some adjustment in the amounts of the payments in the event Mrs. Lerner is taxable upon them. The intention of the Congress in enacting sections 22 (k) and 23 (u) is clear. The Congress intended that the party receiving alimony should include it in income for taxation, and that the person paying alimony should receive a deduction. If the parties choose to make some adjustment between themselves, one compensating the other for the tax paid, such arrangement is not grounds for holding that the provisions of the statute do not apply.

The Committee Reports show that the Congress intended that sections 22 (k) and 23 (u) should be construed so as to be applied uniformly with respect to all taxpayers. We have recognized in other proceedings that the laws of some states are very strict on the matter of whether parties have made any anticipatory agreements to induce the bringing of a divorce proceeding by one of the spouses, and that it is not infrequent to omit from the terms of an agreement that the parties are contemplating a divorce at the time of execution. That is to say, we have exercised some care to understand the true state of mind of the parties where it has appeared that some care was exercised in the drafting of an agreement to save it from being held to be void. Also, we have, in other proceedings, held that it was not a prerequisite that the decree of divorce should refer to and adopt a separate support agreement. Therefore, in this proceeding, it appears that we have adopted a rule which may be in conflict with some of our earlier decisions. See: *Tuckie G. Hesse*, 7 T. C. 700; *George T. Brady*, 10 T. C. 1192; *Robert Wood Johnson*, 10 T. C. 647. This proceeding should, I believe, come within the rule expressed in the *Brady* and *Johnson* cases.

The proceeding of *George D. Wick*, 7 T. C. 723, affd., 161 Fed. (2d) 732, related to payments of alimony *pendente lite*, and is, therefore, distinguishable.

The majority view places considerable stress upon dicta of the court in *Commissioner* v. *Murray*, 174 Fed. (2d) 816, but I am unable to find in that case the authority for the respondent's position which the majority read into the court's discussion of the issue there.

For the above reasons stated, I respectfully dissent.