ESTATE OF DANIEL G. REID, DECEASED, DANIEL REID TOPPING, HENRY J. TOPPING, JR., AND JOHN REID TOPPING, AS ADMINISTRATORS, C. T. A., PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARGARET C. IZRASTZOFF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 20016, 20066. Promulgated October 31, 1950.

*Henry Mannix, Esq.*, and *William W. Lowell, Esq.*, for the petitioners.

*Rigmor O. Carlsen, Esq.*, for the respondent.

574

OPINION.

TIETJENS, *Judge:* In these consolidated proceedings the $30,000 annual payments in 1942 and 1943 were made to petitioner Margaret C. Izrastzoff, the divorced wife of the decedent, pursuant to a written instrument whereby because of the marital relationship a legal obligation to make such payments was imposed upon the former husband and his estate. The questions presented are whether such payments

constituted taxable income to the divorced wife and constituted allowable deductions to the deceased husband's estate.

Section 162 (b) of the Internal Revenue Code provides that an estate is entitled to a deduction of the amount of its income which is currently distributable to a beneficiary, and the amount so allowed as a deduction is includible in the net income of the beneficiary. Section 171 (b) of the Internal Revenue Code provides that for the purpose of computing the net income of an estate and the net income of a divorced wife described in section 22 (k) such wife shall be considered as the beneficiary of the estate and that a periodic payment under section 22 (k) shall be included in the income of such beneficiary. Accordingly, the crux of the questions involved herein is whether the periodic payments are of the character described in section 22 (k) of the Internal Revenue Code and more particularly whether the written instrument, imposing the legal obligation to make such payments, was "incident to" a divorce within the meaning of that section.

Both the petitioner Estate of Daniel G. Reid and the Commissioner contend that the agreement was "incident to" the divorce within the meaning of section 22 (k). On the other hand, petitioner Izrastzoff vigorously asserts that the payments received by her pursuant to the agreement were not alimony, that she is simply a creditor of the estate of her deceased former husband, and that the agreement was not incident to the divorce.

To resolve these contentions resort is made to a number of recent decisions of this Court, among which are *Robert Wood Johnson*, 10 T. C. 647; *George T. Brady*, 10 T. C. 1192; *Jessie L. Fry*, 13 T. C. 658, and *Helen Scott Fairbanks*, 15 T. C. 62. Because the fact situations in cases of this character are so varied, a careful examination of the whole record is required in each in order to reach a proper conclusion. Cf. *Joseph J. Lerner*, 15 T. C. 379, which we think is distinguishable on its facts.

We do not think it necessary again to recite in detail the facts as found. The following sequence of events, however, convinces us that the agreement was incident to the divorce within the meaning of section 22 (k). The husband was a man of extreme wealth. At the time of marriage he was almost twice the age of his wife. When the wife decided to leave her husband on January 19, 1919, she already had undergone several years of severe marital troubles and she left with the firm intention of never returning, an intention fully carried out. From almost the moment his wife left, the husband set about uncovering grounds for divorce from her and employed detectives for that purpose.

On leaving her husband the wife took up residence in hotels where the man whom the husband later named as corespondent in a divorce

action also lived. This couple was under surveillance by the husband's detectives during a period extending well beyond the date of the separation agreement in question for the purpose of developing evidence on which a divorce action could be based.

Against this background the wife began a separation action on February 28, 1919, and almost immediately attorneys for both parties began negotiating a financial settlement and separation agreement between them. These negotiations culminated in the agreement dated March 27, 1919, finally executed April 5, 1919. This agreement dealt in detail with the eventuality of a divorce, preserving to the wife the right to bring a suit for divorce for causes arising in the past for desertion or *injure grave* as understood by the French courts. This gave the wife wide latitude in choosing the forum and grounds for divorce. The agreement also preserved her right to assert any defense or counterclaim in any action brought against her by the husband and did not circumscribe the husband's right in any way to sue for divorce. The agreement provided for a lump sum payment of $200.000 and annual payments of $30,000 to the wife for life, this obligation to be binding on the heirs, executors, administrators, or assigns of the husband. This agreement was accepted by the wife in lieu of her right to support and maintenance and she expressly agreed that in any future action for separation or divorce against her husband she would not make any claim against him for "allowances, alimony, or counsel fees". It was also provided that the agreement would not be affected or impaired should "either party obtain an absolute divorce from the other". The very detail with which these paragraphs of the agreement with reference to a possible divorce action were worked out is strong evidence that divorce was very much in the minds of the parties.

On May 12, 1919, hard on the heels of the financial settlement, Daniel began a divorce action against his wife. She was served in California where she had gone to make her home. Margaret counterclaimed for divorce in this action and in October of the same year brought a suit of her own for divorce which was later dropped.

In the first action, which was tried in February and March 1920, the husband introduced no evidence and an interlocutory decree in favor of Margaret was entered. Margaret made no claim for alimony in the action, nor did the judgment mention alimony or make any mention of the settlement agreement. This omission, which is not controlling, *Robert Wood Johnson, supra; George T. Brady, supra,* was explained by Margaret's testimony that she did not ask for alimony because she already had her financial settlement and was not supposed to ask.

Despite Margaret's denials at the hearing before the Tax Court that the parties ever contemplated divorce or even spoke of it during the period the agreement was being negotiated. we conclude after a careful

examination of the whole record that the settlement and separation agreement was entered into by the parties in contemplation of divorce and was incident to the divorce and that the payments made under it were of the character described in section 22 (k).

Having so concluded, the striking parallelism between the instant case and the recent case of *Helen Scott Fairbanks, supra,* so far as taxability of the wife is concerned, is noted. The only distinction, which is not significant, is that *Fairbanks* involved a property settlement agreement incorporated in a divorce decree, while this case involves such an agreement incident to divorce. Both agreements were binding on heirs, assigns, executors, and administrators of the divorced husband. Both cases involved parties divorced prior to 1942, the first year to which section 22 (k) is applicable. The divorced wives in both cases survived their husbands who died prior to 1942, and in both the husbands had set up *inter vivos* trusts to which their wives were not party to make the periodic payments under the agreements. Following the rationale of *Laughlin's Estate* v. *Commissioner,* 167 Fed. (2d) 828, the wife was held taxable for the payments in the *Fairbanks* case and we decide she should be taxable here.

We conclude and hold that the $30,000 payments received by petitioner Margaret C. Izrastzoff in each of the years 1942 and 1943 constitute taxable income to her in each of those years under section 171 (b) of the Internal Revenue Code, as determined by respondent, and. further, that such payments constitute allowable deductions in each of those years to petitioner Estate of Daniel G. Reid, Deceased, under section 162 (b) of the Internal Revenue Code, as contended by that petitioner.

On the issue as to whether the Estate of Daniel G. Reid is entitled to deductions for the periodic payments made to petitioner Izrastzoff, respondent apparently acquiesces in the estate's theory that since it was basically obligated to make the payments to the wife pursuant to the agreement, the income of the *inter vivos* trust used to help satisfy this obligation was constructive income of the estate; and, having so reported such trust income for income tax purposes the estate, if entitled to any deduction therefor, would be entitled to deduct the full amount of the payments, for, on brief, respondent states, "Were it not for the question of double deductions, * * * such reciprocal right of deduction on the part of the state would concededly exist."

Respondent does contend that the estate is not entitled to the claimed deduction for income tax purposes because of the previous allowance of the commuted value of such payments in determining the net estate subject to estate tax. In our opinion, such contention is effectively met and disposed of contrariwise by the decision of the Circuit Court of Appeals, Ninth Circuit, in *Laughlin's Estate* v. *Commissioner, supra,*

which held that the estate of the deceased husband was entitled to a deduction under section 162 (b) for amounts paid under an agreement similar to the one here involved despite arguments that the estate had "already received the benefit of an estate tax deduction for the commuted value of its obligation to" (the wife), "and that double deductions should not be allowed." The Court goes on to say, at page 830, "* * * we cannot ignore the clear mandate of the statute allowing the income tax deduction here claimed".

Respondent, however, argues, in effect, that the *Laughlin* case does not give full consideration to the well established general "policy against double deduction under federal tax laws." This argument is not well taken. The deduction for the wife's commuted interest in the *inter vivos* trust was taken for estate tax purposes in 1926. The deduction here claimed is for income tax purposes and is based on a statute enacted years afterward. Deduction of the same items for estate tax purposes and income tax purposes is permissible. It was held in *Robert J. Kleberg et al., Executors*, 31 B. T. A. 95, that an item properly deductible under some provision of the estate tax law for the purpose of determining the net estate subject to tax could also be deducted under a provision of the income tax law in determining the net income of the estate. See also *Adams* v. *Commissioner*. 110 Fed. (2d) 578; *Estate of Virgil L. Highland*, 43 B. T. A. 598; affd., 124 Fed. (2d) 556; *Estate of M. M. Stark*, 45 B. T. A. 882.

Reviewed by the Court.

> *In Estate of Daniel G. Reid, Deceased, decision will be entered under Rule 50.*
> *In Margaret C. Izrastzoff, decision will be entered for the respondent.*