ELEANOR C. SHOMAKER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88755. Filed May 1, 1962.

*William J. Hotz, Jr., Esq.*, for the petitioner.
*Jack Morton, Esq.*, for the respondent.

ATKINS, *Judge:* The respondent determined deficiencies in income tax for the taxable years 1957 and 1958 in the respective amounts of $1,184.14 and $3,256.42, and an addition to tax in the amount of $296.03 for 1957 for failure to timely file an income tax return.

The questions presented are whether amounts received by the petitioner in 1957 and 1958 from her husband pursuant to the decree of a divorce court are includible in her gross income under the provisions of section 71 of the Internal Revenue Code of 1954, and if so whether section 71 is contrary to the 5th and 16th amendments to the Constitution of the United States; and whether petitioner is liable for an addition to tax under section 6651(a) of the Internal Revenue Code of 1954 for failure to timely file a return for 1957. Respondent, by amended answer, prays for an increase in the deficiency for 1958 by the amount of $1,438.30 based upon the fact, stipulated by the parties, that in 1958 the petitioner received $18,450 from her husband (instead of $15,000 as determined by the respondent); the petitioner by reply to the amendment to the answer alleges an overpayment of taxes for the year 1958 in the amount of $561.63. Respondent has conceded on brief that if the amounts received by petitioner from her husband are properly includible in her taxable income she is entitled to dependency exemption deductions for each year for her three children.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are incorporated herein by this reference.

The petitioner is an individual residing in Omaha, Nebraska. For the taxable years 1957 and 1958 she filed Federal income tax returns with the district director of internal revenue for the district of Nebraska, her return for the year 1957 being filed on February 1, 1960.

The petitioner and her husband, William Lawrence Shomaker, were married on October 22, 1938. By decree of the District Court of Douglas County, Nebraska, filed on May 13, 1957, the petitioner was awarded a divorce from bed and board from William Lawrence Shomaker, and was awarded custody and control of their three minor children, William John Shomaker, age 17; Robert Lawrence Shomaker, age 16; and Thomas Joseph Shomaker, age 9. The court dismissed the husband's cross-petition for an absolute divorce. In the decree the court made specific provision for the allocation or division of each item of real and personal property as between the petitioner and her husband. The court also decreed:

10. For the full support and maintenance of plaintiff and the three children of the parties hereto, including the education of the children through high school and college, the defendant is hereby ordered to pay to the Clerk of this Court for the plaintiff the sum of $15,000.00 per year in twelve monthly installments

for each of the five years following the date of this Decree; thereafter the sum of $10,000.00 per year in twelve monthly installments for each of the succeeding five years; $7,500.00 per year in twelve monthly installments for each of the succeeding five years; and $2,500.00 a year in twelve monthly installments for each of the succeeding ten years. Said payments are to commence immediately upon the entry of this Decree, giving defendant credit for any amounts previously paid during May, 1957.

Pursuant to an appeal taken to the Supreme Court of Nebraska by William Lawrence Shomaker, the above decree was affirmed on February 28, 1958, in all respects, with one exception not material here. *Shomaker* v. *Shomaker*, 166 Neb. 164, 88 N.W. 2d 221.

Pursuant to the above decree the petitioner received from William Lawrence Shomaker in the taxable years 1957 and 1958 the amounts of $6,400 and $18,450, respectively. Payments were made by Shomaker to the clerk of the court who then drew checks in the name of the petitioner.

During the period from May 13, 1957 through December 1957, the petitioner expended an aggregate of $2,048.26 attributable to the support of her children, $612.90 attributable to her support, and $4,407.43 for household expenses and for other purposes the benefit of which was shared by the petitioner and her three children, and which she allocated one-fourth, or $1,102.43, as being for her own support and three-fourths, or $3,305, as being for the support of the children. During the taxable year 1958 the petitioner expended an aggregate of $6,652.87 attributable to the support of her children, $1,214.84 attributable to her support, and $7,877.22 for household expenses and for other purposes the benefit of which was shared by the petitioner and her three children, of which she allocated as being for her own support one-fourth or $1,969.30, and three-fourths or $5,907.92 to the children.

In her income tax return for the taxable year 1957, which was filed on February 1, 1960, the petitioner reported gross income of $396.94, and no tax liability. This income was from interest, and no amount was included in income on account of amounts received during the year from her husband. In such return she stated:

During 1957 the taxpayer was separated from her husband, and a decree of separate maintenance was entered by the District court of Douglas County, Nebraska, on May 13, 1957. The taxpayer received money from her husband during 1957, however, this was not income but rather was contribution for child support. The decree of separate maintenance was appealed from and was not affirmed by the Supreme Court of Nebraska until February 28, 1958.

In her income tax return for the year 1958, petitioner reported as income the sum of $4,062.50 as alimony received.

In the notice of deficiency the respondent determined that petitioner had received alimony income of $6,400 in 1957 and alimony income of $10,937.50 in 1958, in addition to that reported, and increased tax-

able income by those amounts. Respondent further determined that petitioner was liable for a penalty in the amount of $296.03 for the year 1957 for failure to timely file a return for that year.

Petitioner's failure timely to file an income tax return for 1957 was not due to reasonable cause but was due to willful neglect.

## OPINION.

In her petition and at the hearing the contention was advanced on behalf of the petitioner that the respondent erred in including in her taxable income, pursuant to section 71 of the Internal Revenue Code of 1954,[1] the amounts received from her husband pursuant to paragraph 10 of the decree of the divorce court. The grounds were that such payments constituted, in part, payments for support of the children and/or, in part, payments of a property settlement. It would appear that these arguments have been abandoned since they are not pressed on brief. In any event, it is clear to us that they are without merit. In its decree the court, by entirely separate provisions, specifically made provision for the division of property, and there is no indication in such decree that the amounts here in question had any relation to the settlement of property rights. Although the payments were made for the support of both the wife and the children, no amount of money and no specified part of any payment was fixed as a sum payable for the support of the children, as is required for the applicability of section 71(b) of the Code. This question has been set at rest by the decision in *Commissioner* v. *Lester*, 366 U.S. 299.

---

[1] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

\* \* \* \* \* \* \*

(b) PAYMENTS TO SUPPORT MINOR CHILDREN.—Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. * * *

(c) PRINCIPAL SUM PAID IN INSTALLMENTS.—

(1) GENERAL RULE.—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

(2) WHERE PERIOD FOR PAYMENT IS MORE THAN 10 YEARS.—If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.

That case involved a written agreement, approved by the divorce court, which provided for payments by the husband to the wife of amounts for the support and maintenance of the wife and the children, the amounts to be used for the children not being specified. The court held that the payments made were deductible by the husband (and taxable to the wife), stating in part:

The statutory requirement is strict and carefully worded. It does not say that "a sufficiently clear purpose" on the part of the parties is sufficient to shift the tax. It says that the "written instrument" must "fix" that "portion of the payment" which is to go to the support of the children. Otherwise, the wife must pay the tax on the whole payment. We are obliged to enforce this mandate of the Congress.

There remains the controversy between the parties as to whether the payments received by the wife are to be excluded from her income by virtue of the provisions of section 71(c). The petitioner contends that these payments constitute installment payments within the intendment of section 71(c)(1). It is her position that the decree specifies a principal sum for each year, namely, $15,000 (for each of the first 5 years), and that each such specified sum is payable over a period of 12 months; therefore she argues that there are here no installment payments which are to be paid over a period ending more than 10 years from the date of the decree within the meaning of section 71(c)(2).

The respondent, on the other hand, contends that the payments in question are taxable in full to the petitioner as periodic payments within the provisions of section 71(a)(1). It is his position that the payments should not be considered as installment payments discharging a part of an obligation the principal sum of which is specified in the decree, within the meaning of section 71(c), but he contends, alternatively, that if it be considered that a principal sum was specified in the decree, such sum would be the total of all payments to be made, namely, $187,500, and that this principal sum is to be paid over a period of 25 years.

In *Helen Stewart Cramer*, 36 T.C. 1136, we took the position, following a number of decisions of Courts of Appeals, that if payments provided for the wife are subject to any contingencies, such payments are to be treated as periodic payments under section 71(a)(1) and not installment payments discharging a part of an obligation the principal sum of which is specified in the decree, instrument, or agreement within the meaning of section 71(c). In the *Cramer* case certain contingencies were stated in the agreement. In the instant case no contingencies are stated in the decree. The provision is for the payment of $15,000 per year for the first 5 years after the decree, $10,000 per year for the next 5 years, $7,500 per year for the next 5 years, and $2,500 per year for each of the succeeding 10 years, payments to be

made in monthly installments. These payments were designated as being for the full support and maintenance of the petitioner and the three children of the parties, including the education of the three children through high school and college. The court did not specify that any of such payments were subject to contingencies such as the death of either spouse or the remarriage of the wife. Whether, despite this, the payments might be considered as contingent because of the operation of local law,[2] we find it unnecessary to here decide. Even if it were assumed *arguendo* that these payments were installment payments discharging a part of an obligation the principal sum of which is provided in the decree, we think the only logical conclusion would be that the principal sum specified in the decree is the total of all the payments to be made, namely, $187,500, and that such sum is to be paid over a period ending more than 10 years from the date of the decree. *Frank P. Orsatti,* 12 T.C. 188. This is in accord with section 1.71–1(d)(5) of the Income Tax Regulations, which we cannot conclude is unreasonable.[3] The case would then fall within the provisions of section 71(c)(2), which provides that if the principal sum is to be paid over a period ending more than 10 years from the date of the decree the installment payments shall be treated as periodic payments for the purpose of section 71(a) to the extent, in any one taxable year of the wife, of 10 percent of the principal sum. Since 10 percent of the principal sum would be $18,750, and since in each of the years in question the amount received by the petitioner did not exceed $18,750, the amounts received by the petitioner in each year would be taxable to her as periodic payments within the meaning of section 71(a).

We see no merit in the petitioner's contention that it should be considered that the decree specifies 25 separate principal sums representing obligations, each of which is payable over a period of 12 months, and that thus the payments are to be treated as installment payments excludible from her gross income under section 71(c). We have carefully examined *Fidler* v. *Commissioner*, (C.A. 9) 231 F.

---

[2] Section 1.71–1(d)(3) of the Income Tax Regulations provides that payments in the nature of alimony or allowance for support which are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse are to be considered as periodic payments within the meaning of section 71(a) regardless of whether the contingencies are set forth in the terms of the decree, instrument, or agreement, or are imposed by local law.

[3] Example 4 set forth in section 1.71–1(d),(5) of the Income Tax Regulations is as follows:

A divorce decree in 1954 provides that H is to pay W $20,000 each year for the next five years, beginning with the date of the decree, and then $5,000 each year for the next ten years. Assuming the wife makes her returns on the calendar year basis, each payment received in the years 1954 to 1958, inclusive, is treated as a periodic payment under section 71(a)(1), but only to the extent of 10 percent of the principal sum of $150,000. Thus, for such taxable years, only $15,000 of the $20,000 received is includible under section 71(a)(1) in the wife's income and is deductible by the husband under section 215. For the years 1959 to 1968, inclusive, the full $5,000 received each year by the wife is includible in her income and is deductible from the husband's income.

2d 138, modifying 20 T.C. 1081, which the petitioner contends lends support to her contention in this respect. That case is clearly distinguishable in that there the agreement, decree, and certain notes clearly set forth separate obligations, one of which was payable unconditionally and the other of which was subject to a contingency.

In view of the above, we conclude that under section 71 the amounts in question constituted taxable income to the petitioner in the years in question.

The petitioner has pleaded and contends that if it be held that the payments in question come within the taxing provisions of section 71, then such section is contrary to the 16th and 5th amendments to the Constitution of the United States.[4]

An Act of Congress is not lightly to be set aside; doubts must be resolved in its favor; and the presumption of validity is particularly strong in the case of a revenue measure. As stated by the Supreme Court in *Nicol* v. *Ames*, 173 U.S. 509:

> It is always an exceedingly grave and delicate duty to decide upon the constitutionality of an act of the Congress of the United States. The presumption, as has frequently been said, is in favor of the validity of the act, and it is only when the question is free from any reasonable doubt that the court should hold an act of the lawmaking power of the nation to be in violation of that fundamental instrument upon which all the powers of the Government rest. This is particularly true of a revenue act of Congress. * * *

See also *Penn Mutual Indemnity Co.*, 32 T.C. 653, affd. (C.A. 3), 277 F. 2d 16, and cases cited therein.

The petitioner argues as follows: The 16th amendment authorizes Congress to collect taxes without apportionment on "incomes from whatever source derived"; in its revenue Acts Congress had the intent to use its power to the full extent; in *Gould* v. *Gould*, 245 U.S. 151, the Supreme Court held that alimony was not income within the meaning of the Revenue Act of 1913, which imposed a tax on gains or profits and income derived from any source whatever; and that if alimony was not income within the meaning of the Revenue Act of 1913, then it should be considered as not income within the meaning of the term "income" as used in the 16th amendment. This same argument has been presented heretofore in a number of cases and has been rejected by the courts. *Daisy M. Twinam*, 22 T.C. 83; *Muriel Dodge Neeman*, 26 T.C. 864, affirmed per curiam (C.A. 2) 255 F. 2d 841, certiorari denied 358 U.S. 841; *Mahana* v. *United States*, (Ct. Cl.) 88 F. Supp. 285, certiorari denied 339 U.S.

---

[4] The 16th amendment to the Constitution of the United States provides:
"The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration."
The fifth amendment to the Constitution provides that no person shall "be deprived of life, liberty, or property, without due process of law."

978, rehearing denied 340 U.S. 847; and *Fairbanks* v. *Commissioner*, (C.A. 9) 191 F. 2d 680, affirming 15 T.C. 62, certiorari denied 343 U.S. 915. It should be added that the 16th amendment did not grant Congress the power of taxation but merely provided that income from any source could be taxed without apportionment. The taxing power of Congress was granted by Article I of the Constitution and such power is exhaustive and embraces every conceivable power of taxation, subject only to certain constitutional restrictions. *Pollock* v. *Farmers' Loan & Trust Co.*, 157 U.S. 429, 158 U.S. 601; *Brushaber* v. *Union Pac. R.R.*, 240 U.S. 1; *Fairbanks* v. *Commissioner*, *supra;* and *Penn Mutual Indemnity Co.*, *supra.*

The petitioner further argues that in any event section 71 should be held unconstitutional to the extent that it would tax to her any amount in excess of the portion received by her for her own support. It is her contention any amount which she was legally or morally required to spend for the maintenance and education of the children may not be considered as income to her. On brief she refers to her testimony that it was her interpretation of the terms of the decree that all payments, except a residual amount of $2,500 per year, was to be spent for the maintenance and education of the children, and that the only amount which she could spend at her discretion was the amount of $2,500 per year. She cites *Lewis* v. *White*, (D. Mass.) 56 F. 2d 390, appeal dismissed (C.A. 1) per curiam, 61 F. 2d 1046 (which in turn cites *Hoeper* v. *Tax Commission*, 284 U.S. 206; *Nichols* v. *Coolidge*, 274 U.S. 531; and *Blodgett* v. *Holden*, 275 U.S. 142), which holds that an attempt by Congress to measure an income tax on one person by reference to the income of another would conflict with the due process clause of the fifth amendment. She therefore contends that to tax her on the portion of the payments provided for the support of the children would amount to imposing a tax upon her measured by the income of her husband; resulting in denial to her of due process of law.

Although in *Commissioner* v. *Lester*, *supra*, the Supreme Court did not consider a constitutional question, we believe the reasoning there employed is determinative of the question here presented. There an agreement between a husband and wife, ratified by a divorce court, provided for payments to be made to the wife for her support and maintenance and that of the children of the parties. The amount to be paid for the support of the children was not designated, although it was provided that in the event any of the children should marry, become emancipated, or die the payments specified should be reduced by one-sixth. The Court in concluding that the payments were deductible by the husband (and income to the wife) under the provisions of the Internal Revenue Code of 1954, stated in part:

One of the basic precepts of the income tax law is that "[t]he income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not." *Corlis* v. *Bowers*, 281 U.S. 376, 378 (1930). Under the type of agreement here, the wife is free to spend the monies paid under the agreement as she sees fit. "The power to dispose of income is the equivalent of ownership of it." *Helvering* v. *Horst*, 311 U.S. 112, 118 (1940). Including the entire payments in the wife's gross income under such circumstances, therefore, comports with the underlying philosophy of the Code. And, as we have frequently stated, the Code must be given "as great an internal symmetry and consistency as its words permit." *United States* v. *Olympic Radio & Television*, 349 U.S. 232, 236 (1955).

*　　*　　*　　*　　*　　*　　*

As we read § 22(k), the Congress was in effect giving the husband and wife the power to shift a portion of the tax burden from the wife to the husband by the use of a simple provision in the settlement agreement which fixed the specific portion of the periodic payment made to the wife as payable for the support of the children. Here the agreement does not so specifically provide. On the contrary, it calls merely for the payment of certain monies to the wife for the support of herself and the children. * * *

Since in the *Lester* case the Supreme Court concluded that the wife was free to spend the moneys as she saw fit, and therefore had such power to dispose thereof as to be the equivalent of ownership of such moneys, we think it would necessarily follow that it could not be concluded that a tax upon her measured by such income would constitute the measuring of her tax by the income of another. It follows that the imposition of the tax upon the petitioner in the instant case, the facts of which are similar to those in the *Lester* case,[5] would not constitute the measuring of her tax liability by the income of another. As we pointed out in *Muriel Dodge Neeman*, *supra*, the Supreme Court, in *Heiner* v. *Donnan*, 285 U.S. 312, held that a taxing statute to be unconstitutional under the fifth amendment must be so arbitrary as to amount to a confiscation, or a clear and a gross inequality or injustice. It is our conclusion that under the circumstances of the instant case the application of section 71 does not violate the due process clause of the fifth amendment.

We conclude, therefore, that section 71 of the Internal Revenue Code of 1954 does not violate the Constitution in requiring that the full amounts received by the petitioner in the years in question be included in her taxable income.

---

[5] As pointed out in the Findings of Fact, the decree of the District Court of Douglas County was approved on appeal taken by the husband to the Supreme Court of Nebraska. In its opinion the Supreme Court of Nebraska stated:

"Although defendant did not contest the aforesaid allowances, he did request a modification of their terms so that he could supervise the proportionate manner of the use and expenditure of such allowances and thus be assured that they would in fact be used for the proper support and education of his children as well as for plaintiff's support. Such request has no merit because we find no reason in this record for concluding that plaintiff will not be able and willing to properly and fairly supervise and make the expenditure of such allowances without any supervision thereof by defendant, who had generally delegated such responsibility to plaintiff since 1942."

As stated hereinabove, the respondent has conceded on brief that if the payments received by the petitioner from her husband are properly includible in her taxable income, she is entitled to deduct dependency exemptions for each year for each of her three children, pursuant to section 151 of the Code. Such dependency exemptions will be allowed upon the recomputation under Rule 50.

In her original brief the petitioner requested, for the first time, that her tax be computed at the rate provided by section 1(b) of the Internal Revenue Code of 1954 for the head of a household. This issue was not raised in the petition nor was any motion ever made to amend the petition. In his reply brief the respondent denies that this issue has been properly raised. We agree. Rule 7 of the Rules of Practice of this Court provides that the petition contain clear and concise assignments of each and every error alleged and statements of the facts upon which the petitioner relies as sustaining the assignments of error, and Rule 17 contains provisions with respect to the amendment of the pleadings. We have consistently held that since the primary purpose of pleadings is the joinder of issue between the parties, issues attempted to be raised by brief will be disregarded. *H. D. & J. K. Crosswell, Inc.*, 6 B.T.A. 1315; *Lynne Gregg*, 18 T.C. 291, affirmed per curiam (C.A. 3) 203 F. 2d 954; *Frank Polk*, 31 T.C. 412, affd. (C.A. 10) 276 F. 2d 601; and *Factor* v. *Commissioner*, (C.A. 9) 281 F. 2d 100, affirming a Memorandum Opinion of this Court, certiorari denied 364 U.S. 933. We must decline to consider this question.

There remains the question as to the propriety of the respondent's determination of an addition to tax pursuant to section 6651 of the Internal Revenue Code of 1954 for failure of the petitioner to timely file a return for the taxable year 1957.[6]

It is the petitioner's position that her failure to timely file a return was due to reasonable cause and not due to willful neglect. Her delinquent return for 1957 showed income of only $396.94 (interest income); thus apparently she would not be required to file a return except for the payments received from her husband. With respect to the payments from her husband she testified that it was her understanding that she was entitled to only the residual amount of $2,500 per year for her own support; that the divorce case had been appealed by her husband and that during that year she was receiving from him

---

[6] SEC. 6651. FAILURE TO FILE TAX RETURN.

(a) ADDITION TO THE TAX.—In case of failure to file any return required under authority of subchapter A of chapter 61 * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.

less than the decree had stipulated; that it was "our position" that the amount received in 1957 ($6,400) was support money for the children; that when the Supreme Court of Nebraska in 1958 affirmed the decision of the lower court, the payments were brought up to date; and that the amounts which she received in 1958 which she considered as being for her own support for 1957 and 1958 were reported by her in her return for 1958 (the amount included in the return for 1958 was $4,062.50).

On brief it is pointed out on behalf of the petitioner that the question of whether a wife is taxable upon all payments received for support of both herself and children, where the amount intended for child support is not specified, was not settled until the decision of the Supreme Court in the *Lester* case on May 23, 1961; that the petitioner was therefore unable to make an intelligent decision on the question of whether to report any income for the year 1957; and that this is an additional reason why an addition to tax should not be assessed against her for failure to timely file a return for the year 1957.

Whether a failure to file a return was due to reasonable cause is essentially a question of fact and the burden of proof is upon the petitioner. *Coates* v. *Commissioner*, (C.A. 8) 234 F. 2d 459, affirming a Memorandum Opinion of this Court, and *Beck Chemical Equipment Corporation*, 27 T.C. 840. The petitioner did not testify that her failure to file was based upon professional advice. We do not construe her testimony to the effect that it was "our position" that the amount received in 1957 was for child support as meaning that she had obtained professional advice to that effect. Accordingly, such cases as *Reliance Factoring Corp.*, 15 T.C. 604, and *Daisy M. Twinam, supra*, which hold that under some circumstances a failure to file based upon professional advice is due to reasonable cause, are not in point. We have held that taxpayers who deliberately omit to file returns must use reasonable care to ascertain that no returns are necessary, and that in the absence of obtaining competent advice, the mistaken belief on the part of a taxpayer that no return was required under the statute does not constitute reasonable cause for noncompliance. *Beck Chemical Equipment Corporation, supra*, and cases cited therein. And it should be pointed out that ignorance of the law does not amount to reasonable cause for purposes of this statute. *Andre Picard*, 28 T.C. 955.

In view of the above, we must conclude that the petitioner has not established that her failure to file was due to reasonable cause and not to willful neglect. The proper amount of the addition to tax will be computed in the recomputation under Rule 50.

*Decision will be entered under Rule 50.*