543 F.2d 425
 76-1 USTC P 9414
 Irwin C. GUILD and Bernice Guild, Appellants-Cross-Appellees,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee-Cross-Appellant.
JONATHAN LOGAN, INC., Appellee,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellant.
 Nos. 528, 1042, Dockets 75-4123, 75-4201.
 United States Court of Appeals,
Second Circuit.
 Argued April 8, 1976.
Decided May 7, 1976.
 
 Elias Rosenzweig, New York City (Brauner, Baron, Rosenzweig & Kligler, New York City, of counsel), for appellants-cross-appellees.
 Stephen D. Gardner, New York City (Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, of counsel), for appellee Jonathan Logan, Inc.
 George G. Wolf, Atty., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Elmer J. Kelsey, Attys., Tax Div., Dept. of Justice, Washington, D. C., of counsel), for Commissioner of Internal Revenue.
 Before FRIENDLY, MANSFIELD and MULLIGAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Following termination in November 1964 of his employment as a divisional sales manager of Jonathan Logan, Inc. ("Logan"), Irwin C. Guild filed a suit for damages against Logan, claiming breach of his employment agreement and of a separate stock option agreement. The option agreement granted him the right to exercise options for the purchase of designated amounts of Logan stock at $15.46 per share during each of several specified periods of his employment. However, it further provided that if his employment should be terminated the remaining options would cease except for that granted for the Exercise Period in effect at the time of termination, which might be exercised within three months from the date of termination. Prior to termination of his employment Guild had exercised the option for this current period.[1] However, in his lawsuit he claimed the right, in addition, to exercise the options for the remaining three periods. The suit was settled in 1967 when Guild paid Logan $100,490 for 6,500 shares of Logan stock having a market value of $354,250. Guild then transferred 388 of these shares, having a market value of $22,116, to his attorney for $5,999 in payment for services in prosecuting his lawsuit.
 
 
 2
 In his 1967 federal income tax return Guild reported no income as a result of his purchase of the Logan shares. The Commissioner of Internal Revenue ("the Commissioner") assessed a deficiency of $161,458 reflecting ordinary income to Guild of $253,760, which was the difference between the fair market value of the shares and the amount Guild paid for them. On its 1967 federal income tax return Logan deducted this difference as a business expense, i. e., compensation to Guild. To protect against the possibility that Guild might establish that his stock purchase constituted the exercise of a restricted stock option qualifying for non-recognition of income under §§ 421, 424 of the Internal Revenue Code of 1954, the Commissioner made an admittedly inconsistent determination that the difference was non-deductible by Logan and assessed a deficiency accordingly.
 
 
 3
 Guild and Logan petitioned to the Tax Court for redetermination of the deficiencies assessed against each, respectively. That Court, in findings and an opinion filed by Judge Wiles on September 16, 1974, held that Guild's purchase of Logan's stock pursuant to the settlement agreement did not constitute the exercise of a restricted stock option under § 424 of the Internal Revenue Code and that his gain on the transaction, subject to a deduction for legal fees, represented compensation which should be classified as ordinary income rather than as capital gain. From this decision Guild appeals, claiming that he purchased the 6,500 Logan shares pursuant to restricted stock options of which he had been wrongfully deprived by Logan and that this was recognized by the parties' settlement agreement which gave him the right to purchase shares "upon the terms and conditions of the option." The Commissioner has taken a protective cross-appeal from the Tax Court's decision to the effect that Logan properly deducted the compensation to Guild as a business expense.
 
 DISCUSSION
 
 4
 We affirm the Tax Court's decision on the basis of Judge Wiles' carefully considered opinion. Guild's purchase of Logan stock did not represent the exercise of a restricted stock option as that term is defined in § 424 of the Code. Nor did it satisfy the basic requirements fixed by that section for the exercise of such an option. The difference between the purchase price and the market value of the shares purchased by Guild at a bargain price in settlement of his lawsuit constituted compensation, taxable as ordinary income, after deduction of the bargain element of the price of the Logan stock sold to his attorney below market for legal services.
 
 
 5
 One additional argument advanced by Guild merits discussion, since it was not put forth prior to the Tax Court's September 16, 1974, opinion. He points to the fact that since the Logan shares purchased by him pursuant to the settlement agreement were acquired upon "the terms and conditions of the option" they were subject to restrictions on sale or disposition imposed by the securities laws on "letter stock" acquired for investment and had a value significantly below the $354,250 attributed to them by the Commissioner. Therefore, he argues, under Treasury Regulations, §§ 1.61-2(d)(5) and 1.421-6(d)(2), the acquisition of the shares was not a taxable event and "ordinary income will not be realized until the time such restriction lapses or the property is sold or exchanged in an arm's length transaction," Internal Revenue Manual, Prime Issue Case Guidelines, No. 0421.01-01; Hirsch v. Commissioner, 51 T.C. 121, 137 (1968). Whatever merit this argument may have and that would depend in part on a factual showing it was waived by Guild's failure to raise it in a timely fashion. The claim was not asserted in Guild's pleadings or at any later stage of the litigation until February 19, 1975, which was five months after Judge Wiles' September 16, 1974, opinion. It was then denied as untimely. See Maxcy v. Commissioner, 59 T.C. 716, 728 (1973); Shomaker v. Commissioner, 38 T.C. 192, 201 (1962).
 
 
 6
 No legally acceptable excuse has been offered by Guild for his failure to raise the issue at an earlier point. The material fact the provision of the option contract possibly restricting the marketability of the stock was known to him before he filed his petition in the Tax Court. Nor was there a sudden change of the legal principles applicable in this area which might have caught Guild by surprise. In 1968 the Tax Court had held in Hirsch v. Commissioner, supra, that the receipt of property subject to a significant restriction does not give rise to income until the restriction lapses or is otherwise disposed of. This decision was acquiesced in by the Commissioner in 1970, see 1970-2 Cum.Bull. xx, two years before Guild filed his petition in the Tax Court. This decision and the Commissioner's acquiescence in it clearly should have alerted Guild to the possibility of raising such an argument in the present case long before he actually raised it.
 
 
 7
 In view of this background, we find no abuse of discretion in the Tax Court's refusal to accept Guild's plea that he had not become aware of the restriction until he received the briefs of Logan and the Commissioner or in that Court's adherence to its rule that a petitioner will not be allowed at such a late date to raise a new issue not alleged in his petition.
 
 
 8
 The decision of the Tax Court is affirmed.
 
 
 
 [1]
 The four Exercise Periods were as follows:
 On or after September 24, 1964 .. 10,000 shares
On or after April 1, 1965 ........ 5,000 shares
On or after April 1, 1966 ........ 5,000 shares
On or after April 1, 1967 ........ 5,000 shares