SOL LEFKOWITZ and ROSLYN LEFKOWITZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lefkowitz v. Commissioner
Docket Nos. 5553-77, 2968-79.
United States Tax Court
T.C. Memo 1980-318; 1980 Tax Ct. Memo LEXIS 268; 40 T.C.M. (CCH) 978; T.C.M. (RIA) 80318; August 14, 1980, Filed Sol Lefkowitz, pro se. Michael A. DeLuca, for the respondent. *269 SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies and additions to tax in the joint Federal income tax of Sol Lefkowitz and Roslyn Lefkowitz for calendar years 1973, 1974, and 1975 as follows: Deficiency
Addition to Tax
in
Under Sec. 6651(a), [1]
Docket No.
Year
Income Tax
I.R.C. 1954
5553-77
1973
$3,997.22
2968-79
1974
3,521.96
$880.49
2968-79
1975
3,596.04
899.01
Some of the issues raised by the pleadings have been disposed of by the parties, leaving for our decision the following: (1) whether during the years in issue petitioners had a depreciable basis in certain improvements and equipment acquired in 1968 from petitioner-husband's parents; (2) if so, the proper method for calculating allowable depreciation deductions for the taxable years 1973, 1974, and 1975; and (3) whether petitioners are liable for an addition to tax under section 6651(a) for failure to timely file their 1974 and 1975 Federal income tax returns. *270 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Sol Lefkowitz (petitioner) and Roslyn Lefkowitz, husband and wife, who resided in Glen Cove, New York, at the time of filing their petition in this case, timely filed their joint Federal income tax return for calendar year 1973 with the Internal Revenue Service Center, Holtsville, New York. Petitioners filed an amended joint Federal income tax return for calendar year 1973 in September 1974. The Internal Revenue Service Center at Holtsville, New York, received petitioners' joint Federal income tax returns for the calendar years 1974 and 1975 on December 18, 1975, and April 25, 1977, respectively. Petitioner is a self-employed attorney whose office is located in his residence. Petitioner employed a full-time secretary in his law office from mid-December 1973 until September 26, 1975. When this secretary left in September 1975, petitioner did not hire a replacement secretary. Mrs. Lefkowitz took over some of the work which had been done by the secretary. From sometime in 1968 throughout the years in issue, petitioners operated Lefkowitz Summer Homes (Summer Homes), a resort motel. During *271 the years in issue Summer Homes included a number of bungalow buildings, a swimming pool, tennis courts and equipment located on land in Monticello, New York. The property on which the bungalows stand is a portion of a 65-acre tract of land purchased for $15,000 in 1945 by petitioner's parents, Morris and Rachel Lefkowitz, and two other persons. At that time the land was improved with a farmhouse, chicken coops, a barn which had been converted into three apartments, and three bungalows. Thereafter a dispute arose amongst the three owners, and they decided to auction the property to the highest bidder amongst the three of them. As a result of the auction, petitioner's parents repurchased the property with another man for a total price of $24,000. Petitioner's parents and the other owner initially divided the property and operated separate bungalow cottage businesses. They built a number of additional cottages for summer rentals. Some years later petitioner's parents bought the property interest of the other owner and became the sole owner of the property. In approximately 1959, 11 acres of the land was condemned for construction of the New York Thruway. As a result of the *272 condemnation petitioner's father received between $50,000 and $60,000. [2]
On October 11, 1967, petitioner's parents sold 25 acres of their remaining 54 acres to the Sullivan County Harness Racing Realty Corporation. Under the terms of the sale the purchaser executed a mortgage in favor of the sellers for $20,000, bearing interest at a rate of 6 percent per annum, payable January 2, 1968. The "Bargain & Sale Deed with covenants" was dated October 11, 1967, and was received, acknowledged and recorded by the Sullivan County Clerk's Office on the same day. On January 1, 1968, petitioners acquired the Summer Homes property from petitioner's parents. They agreed to a sales price of $100,000. No money was transferred at that time. However, petitioners assumed a mortgage payable to the National Union Bank with a balance of $12,000 and additionally issued two purchase money mortgages, one in the amount of $35,000 in favor of petitioner's parents, and the other in favor of his sister in the amount of $20,000. *273 The "Bargain & Sale Deed with covenant" and the two purchase money mortgages, each dated August 15, 1968, were acknowledged as received by the Sullivan County Clerk's Office on August 16, 1968. The "Bargain & Sale Deed with covenant" provided for the conveyance of-- ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Thompson, Sullivan County, New York, known and distinguished as the south part of farm lot Number five in division lot twenty-five of Great Lot No. 1 of the Hardenburgh Patent * * *. All mortgages were paid in full prior to the date of the trial of this case. On their 1968 Federal income tax return petitioner's parents reported two sales as follows: Description
Land
Bungalow Colony [3]
Type of Property
Real Estate
Real Estate
Date Acquired
1945
1945
Date Sold
1/20/68
1/2/68
Gross Sales Price
$20,000
$100,000
Depreciation Allowed
(or Allowable)
Since Acquisition
$66,106.18
Cost or Other Basis
$11,236.60
$168,450.86
Gain or Loss
$8,763.40
($2,344.68)
*274 On their income tax returns for the calendar years 1968 through 1972, petitioners claimed depreciation deductions on the acquired property as follows: Depreciation
Allowed or
Alleged
Allowable in
Description of
Cost or
Date
Years Prior
Property
Other Basis
Acquired
to 1968
Frame Bldg.
$43,500
1945-55
$22,370
Swimming Pool
15,500
1955
4,845
Equipment
16,084
1959
14,472
Frame Bldgs.
42,772
1956-61
11,815
Equipment
4,754
1960-61
3,575
Frame Bldg.
15,221
1962-63
2,667
Equipment
3,742
1962-63
2,391
Equipment
450
1964
180
Frame Bldg.
14,500
1965
1,305
Equipment
2,500
1965
750
Equipment
2,674
1966
534
Frame Bldg.
8,909
1967
267
Equipment
1,845
1967
184
Total
$172,451
$65,355
Deprec.
Deprec.
Description of
Years
Taken in
Taken in
Property
Rate
1968
1969
Frame Bldg.
SL 6%
$2,610
$2,610
Swimming Pool
SL 6%
700
700
Equipment
SL 10%
1,608
Frame Bldgs.
SL 6%
2,506
2,506
Equipment
SL 10%
475
475
Frame Bldg.
SL 3%
457
457
Equipment
SL 10%
394
394
Equipment
SL 10%
45
45
Frame Bldg.
SL 3%
435
435
Equipment
SL 10%
250
250
Equipment
SL 10%
267
267
Frame Bldg.
SL 3%
267
267
Equipment
SL 10%
184
184
Total
$10,198
$8,590
*275 Deprec.
Deprec.
Deprec.
Description of
Taken in
Taken in
Taken in
Property
1970
1971
1972
Frame Bldg.
$2,610
$2,610
$2,610
Swimming Pool
700
700
930
Equipment
Frame Bldgs.
2,506
2,506
2,506
Equipment
Frame Bldg.
457
457
457
Equipment
374
374
Equipment
45
45
45
Frame Bldg.
435
435
435
Equipment
250
250
250
Equipment
267
267
267
Frame Bldg.
267
267
267
Equipment
184
184
184
Total
$8,095
$8,095
$7,951
Petitioners prepared their own 1974 income tax return with the exception of the Summer Homes Schedule C, which was initially prepared by their accountant. Petitioners filed an application for extension of time to file their 1974 Federal income tax return. The application requested an extension until October 15, 1975. On granting the extension, the Internal Revenue Service marked the application "Final." While the Internal Revenue Service did not receive petitioners' 1974 income tax return until December 18, 1975, petitioners had dated it October 15, 1975. Petitioners completely prepared their own 1975 Federal income tax return after having filed three requests for extensions of time. The Internal Revenue *276 Service granted two extensions; however, the third request was denied on the grounds that an extension of time to file a tax return may not be granted for a period in excess of six months. The tax return, which petitioners dated April 15, 1976, was received by the Internal Revenue Service on April 25, 1977. On their joint 1973, 1974, and 1975 income tax returns, petitioners claimed depreciation deductions with respect to the Lefkowitz Summer Homes in the amounts of $13,955, $14,720, and $14,739, respectively. [4] Respondent in his notice of deficiency for petitioners' taxable year 1973 disallowed $8,290.00 of depreciation claimed with respect to Lefkowitz Summer Homes with an explanation that this amount was claimed with respect to items fully depreciated prior to 1973. In his notice of deficiency for the taxable years 1974 and 1975 respondent disallowed the depreciation claimed with respect to Lefkowitz Summer Homes in full explaining that "you have failed to establish your basis for depreciation on such assets." In his notice of deficiency with respect to the taxable years 1974 and 1975 respondent determined that since "you have not shown that the failure to file [your returns *277 for 1974 and 1975] in time was due to reasonable cause, 25 percent of the tax is added as provided by section 6651(a) of the Internal Revenue Code." OPINION Respondent takes the position that the Summer Homes property when acquired by petitioners had a fair market value in excess of the $67,000 paid by petitioners and that therefore the transaction was a bargain sale. Accordingly, respondent states that a determination of petitioners' unadjusted basis in the acquired property is governed by section 1015(a), which provides: SEC. 1015. BASIS OF PROPERTY ACQUIRED BY GIFTS AND TRANSFERS IN TRUST. (a) Gifts After December 31, 1920.--If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift, except that if such basis (adjusted for the period before the date of the gift as provided in section 1016) is greater than the fair market value of the property *278 at the time of the gift, then for the purpose of determining loss the basis shall be such fair market value. If the facts necessary to determine the basis in the hands of the donor or the last preceding owner are unknown to the donee, the Secretary or his delegate shall, if possible, obtain such facts from such donor or last preceding owner, or any other person cognizant thereof. If the Secretary of his delegate finds it impossible to obtain such facts, the basis in the hands of such donor or last preceding owner shall be the fair market value of such property as found by the Secretary or his delegate as of the date or approximate date at which, according to the best information that the Secretary or his delegate is able to obtain, such property was acquired by such donor or last preceding owner. Relying upon section 1.1015-4, Income Tax Regs., [5] respondent asserts that petitioner's unadjusted basis in the acquired property is $102,345. This is the amount of petitioner's parents' adjusted basis in "Bungalow Colony" at the time of the transfer as shown on Schedule D of their 1968 income tax return. *279 Petitioners contend that, pursuant to section 1015 and section 1.1015-4, Income Tax Regs., their unadjusted basis in the acquired property is $107,096. Petitioners calculate this figure from an alleged depreciation schedule, not introduced in evidence in this case, which petitioner's parents allegedly maintained with regard to the property. Pursuant to the reputed depreciation schedule, petitioners calculated the parents' unadjusted basis in the property at $172,451 and the depreciation allowed or allowable in years prior to 1968 as $65,355. We agree with respondent that under section 1015 and section 1.1015-4, Income Tax Regs., petitioners' unadjusted basis in the acquired property is $102,345. Petitioners have failed to introduce the depreciation schedule to which they refer or any reliable evidence of their basis in the bungalow property other than those figures used by their parents on their 1968 income tax return. Therefore, from the evidence in this record we conclude that petitioners' unadjusted basis in the property is $102,345. Petitioners argue that all of the $102,345 unadjusted basis is attributable to depreciable assets. Respondent contends that the unadjusted *280 basis must be allocated to the underlying land as well as to the improvements and equipment located thereon. To counter respondent's position petitioner asserts that petitioner's parents sold the underlying land in a separate transaction. Petitioners support their contention by referring to the parents' 1968 income tax return which lists on Schedule D a "Land" sale on January 20, 1968. For a number of reasons we conclude that the separate land transaction listed on the parents' income tax return was not for the land underlying the improvements and equipment acquired by petitioners. First of all, as prepared by petitioners' realty attorneys, the Abstract of Title of the premises conveyed from petitioner's parents to petitioners states that petitioner's parents convey to petitioners-- ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Thompson, Sullivan County, New York, known and distinguished as the south part of farm lot Number five in division lot twenty-five of Great Lot No. 1 of the Hardenburgh Patent * * *. [Emphasis added.] Indeed, it is difficult to conceive of petitioner's *281 parents separately selling to petitioners or a third party the land on which the "Bungalow Colony" is located. A second reason for our conclusion is that the sale of land to Sullivan County Harness Racing Realty Corporation was subject to a mortgage in the amount of $20,000 payable January 2, 1968. While the date of the $20,000 sale of "Land" listed on petitioner's parents' income tax return is 18 days later than the date on which the $20,000 mortgage was payable, it is possible that the payment was not received until January 20, 1968. The record shows that petitioner's father was alive and in good health at the time of trial. However, petitioner failed to have his father clarify for the Court the land that was the subject property of the January 20, 1968, sale. The record shows that petitioners prior to 1973 were allowed $42,929 as depreciation on the buildings and other improvements on the property in 1968 when it was acquired from petitioner's parents. However, the record does not show the portion of the $102,345 basis of the property which is allocable to the land. The record shows that sometime after 1945 petitioner's parents together with another person repurchased the *282 65-acre tract for $24,000. Originally petitioner's parents had paid their one-third part of the $15,000 cost of the entire 65-acre tract purchased along with two other persons. However, the record is silent as to when and for what price petitioner's parents acquired the one-half interest in the property which had at the time of repurchase been acquired by the other owner. In 1959, petitioner's father received between $50,000 and $60,000 when 11 acres of the land was condemned. This fact suggests that the amount paid by petitioner's parents to the other owner for his one-half interest in the land may have been a very substantial amount. In any event, there is no evidence in this record to indicate that petitioner's parents' basis in the land transferred to petitioners in 1968 was not at least $60,000. At the trial petitioner testified that the price paid by his parents to the other owner for his one-half interest in the property might show in an abstract of title which the parties agreed to place in evidence. However, the abstract as entered in evidence does not list deeds prior to 1964. All this abstract shows is that petitioner's parents acquired the entire interest in the *283 property prior to 1964. It does not show the date of the acquisition or the amount paid for the interest acquired. Petitioners have the burden of proving respondent's determinations incorrect. Welch v. Helvering,290 U.S. 111 (1933). Petitioners have failed to establish that their $102,345 unadjusted basis did not include in addition to depreciable assets the underlying land. They have also failed to show the basis of the land and therefore have failed to show that the basis of the depreciable assets acquired in 1968 had not been fully recovered by depreciation deductions allowed prior to 1973. Respondent's determination that petitioners did not have a sufficient amount of unadjusted basis following their taxable year 1972 to allow the claimed depreciation deductions during the years in issue is sustained. Accordingly, we need not consider the issue of whether in the years here involved the allowable depreciation, as based on the corrected unadjusted basis, must be calculated at the same rate and by the method selected on petitioner's income tax return, or whether petitioners ar permitted to deduct annually the same dollar amount in depreciation as that taken *284 by the transferor. Petitioners also contest respondent's determination of the additions to tax under section 6651 for failure to timely file their income tax returns for calendar years 1974 and 1975. Section 6651(a)(1) provides that failure to timely file a Federal income tax return results in the application of an addition to the tax of the dilatory taxpayer of 5 percent per month up to a maximum of 25 percent unless the taxpayer proves the failure is "due to reasonable cause and not due to willful neglect." [6]
*285 Petitioners take the position that their failure to timely file their tax returns was due to reasonable cause rather than willful neglect. The question of whether petitioners' failure resulted from "reasonable cause" is a question of fact, and the burden of proof is upon the petitioners. Shomaker v. Commissioner,38 T.C. 192, 202 (1962); Latham Park Manor, Inc. v. Commissioner,69 T.C. 199, 219 (1977), affd. in an unpublished opinion, 618 F.2d 100 (4th Cir. 1980). Petitioner testified that although he was aware of the proper filing date, the failure to file resulted from the lack of proper secretarial assistance in his law office and the inaccessibility of certain records located in Monticello, New York. However, petitioner testified that he made no efforts to hire a new secretary after his secretary left on September 26, 1975, since he could not afford the expense. However, Mrs. Lefkowitz did take over some of the work previously done by the secretary. Petitioner testified that although the records needed to complete the tax returns were inconveniently located in Monticello, New York, he often traveled from Glen Cove to Monticello *286 twice weekly. Additionally, petitioner indicated that the returns were delayed because he and his wife were extremely busy with his law practice and Summer Homes rental business. As we stated in Dustin v. Commissioner,53 T.C. 491, 507 (1969), affd. 467 F.2d 47 (9th Cir. 1972), we expect a taxpayer to exercise "ordinary business care and prudence * * * not [to] take on such a load that he could not fulfill his own legal obligations within the required time." In spite of the facts that petitioners requested extensions of time for filing and that several impediments contributed to petitioners' delay in completing their 1974 and 1975 tax returns, we find as a fact that petitioners' failure to timely file their income tax returns for 1974 and 1975 was not due to reasonable cause. Accordingly, we approve respondent's determination of the addition to tax under section 6651. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect in the years in issue.↩
2. Petitioner was of the opinion that his parents did not report the gain realized on this condemnation as taxable since the proceeds were invested in like kind property.↩
3. Based on this schedule respondent's counsel at the trial conceded that the adjusted basis of petitioner's parents in the land and depreciable assets of the Bungalow Colony when the property was acquired by petitioners was $102,345.↩
4. One of the issues disposed of by agreement of the parties was the depreciation allowance in 1974 and 1975 with respect to improvements made by petitioners after 1968.↩
5. Sec. 1.1015-4(a) provides in part: Sec. 1.1015-4 Transfers in part a gift and in part a sale. (a) General rule. Where a transfer of property is in part a sale and in part a gift, the unadjusted basis of the property in the hands of the transferee is the sum of-- (1) Whichever of the following is the greater: (i) The amount paid by the transferee for the property, or (ii) The transferor's adjusted basis for the property at the time of the transfer, and (2) The amount of increase, if any, in basis authorized by section 1015(d) for gift tax paid (see sec. 1.1015-5).
Petitioners have not alleged that the gift portion of the transaction was a net gift and that they paid any gift tax on the transfer. Therefore we need not consider whether the unadjusted basis as determined under subparagraph (1) of this regulation should be adjusted for gift tax paid.↩
6. Sec. 6651(a)(1) provides: SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX. (a) Addition to the Tax.--In case of failure-- (1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), subchapter A of chapter 51 (relating to distilled spirits, wines, and beer), or of subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate;↩