STEPHEN FREMPONG-ATUAHENE and AGNES FREMPONG-ATUAHENE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Frempong-Atuahene v. Commissioner
Docket No. 870-85.
United States Tax Court
T.C. Memo 1989-67; 1989 Tax Ct. Memo LEXIS 67; 56 T.C.M. (CCH) 1245; T.C.M. (RIA) 89067; February 14, 1989
Mark Kravitz, for the petitioners. Robert A. Ratchford, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined deficiencies in petitioners' income taxes and additions to tax as follows: *69 Additions to Tax
Year
Deficiency [1]
Sec. 6651(a)(1) [2]
Sec. 6653(a)
Sec. 6654(a)
1977
$  5,211.00
$  1,302.25
$   260.55
$   149.65
1978
34,385.00
8,596.25
1,719.25
969.81
1979
13,619.00
3,404.75
680.95
569.32
1980
16,319.00
4,079.75
815.95
1,401.91
After concessions, the issues for consideration are: (1) whether petitioners received, but failed to report, income from wages and interest for years 1977 through 1980; (2) whether petitioners must include in income welfare benefits they received during 1979; (3) whether petitioners must include in income Pennsylvania Unemployment Compensation benefits Stephen Frempong-Atuahene received during 1979; *70 (4) whether petitioners are entitled to a credit for child care expenses, pursuant to section 44A, for 1977 and 1978; (5) whether petitioners are entitled to a deduction for moving expenses, pursuant to section 217, for 1978; (6) whether petitioners are entitled to a deduction for education expenses, pursuant to section 162, for 1980; (7) whether petitioners conducted any business activity in the name of D.P. Search Group for years 1977 through 1980 and in the name of Business Consultants Group in 1979; and, if so, whether petitioners incurred deductible business expenses with respect to such businesses; (8) whether petitioners are liable for the addition to tax for failure to file under section 6651(a)(1) for 1977 through 1980; (9) whether petitioners are liable for the addition to tax for negligence under section 6653(a) for years 1977 through 1980; and (10) whether petitioners are liable for the addition to tax for failing to make estimated tax payments under section 6654(a) for years 1977 through 1980. FINDINGS OF FACT AND OPINION Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. *71 Petitioners, husband and wife, resided in Philadelphia, Pennsylvania at the time of filing the petition herein. They are citizens of Ghana who came to the United States in 1973 as political refugees. For convenience, we have combined the specific findings of fact and opinion with respect to each issue. At the outset, we note that deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934). In addition, under section 6001, petitioners are required to maintain records sufficient to establish the amount of any deductions claimed by them on their income tax returns. See also sec. 1.6001-1(a), Income Tax Regs. Further, petitioners are not entitled to any deductions unless they can substantiate them. Hradesky v. Commissioner,65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). In other words, it is petitioners who bear the burden of proof on each of the issues in this case. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule *72 142(a). 1. Unreported Wages and Interest Income
Petitioners concede that between 1977 and 1980 Mr. Frempong-Atuahene was employed, primarily as a computer consultant, by the following companies, from which he received wages as follows: Year
Wages Company
1977
$   8,267
Massachusetts Mutual Life Insurance Co.
1977
4,500
Aetna Life Insurance Co.
1978
7,062
Aetna Life Insurance Co.
1978
19,499
Colonial Penn Group Data Corp.
1979
4,333
Colonial Penn Group Data Corp.
1979
18,962
Penn Mutual Life Insurance Co.
1980
38,325
Penn Mutual Life Insurance Co.
Petitioners further concede that Mrs. Frempong-Atuahene was employed by the following companies from which she received wages as follows: Year
Wages Company
1977
$  7,679 Digital Equipment Corp.
1978
4,025 Digital Equipment Corp.
1979
557 Addressograph
1980
6,708 Wando Optical
It is beyond question that petitioners' wage income constitutes gross income within the meaning of section 61. Petitioners were the record owners of several interest bearing bank accounts; they concede that such accounts earned interest income in the following *73 respective amounts during 1977, 1978, 1979, and 1980: $ 323, $ 1,209, $ 1,618, and $ 2,341. Petitioners claim that they held such accounts in part for the benefit of others, but they presented no evidence to substantiate their self-serving statements, which we find unpersuasive. Accordingly, the entire amount of interest income is includible in petitioners' gross income. Section 61(a)(4). 2. Welfare Benefits
On February 8, 1979, petitioners applied for welfare benefits from the Welfare Board of Burlington County, New Jersey. In their application, petitioners stated that they had only $ 150 in cash; they failed to disclose that they had over $ 8,600 in savings accounts and certificates of deposit. Had petitioners advised the welfare board of their savings accounts, they would not have qualified for welfare benefits. Petitioners also represented that five children were residing with them, when in fact only one child was residing with them. As a result of their deception, petitioners received welfare benefit checks, dated February 23 and March 9, 1979, in the respective amounts of $ 67 and $ 326. *74 Section 61(a) defines gross income as all income, from whatever source derived, except as otherwise provided. However, disbursements from a general welfare fund in the interest of the general public which are not made for services rendered generally are not includible in gross income. See Rev. Rul. 63-136, 1963-2 C.B. 19. In filing their application for welfare, petitioners made false representations to gain benefits to which they were not entitled. In substance, their receipt of the welfare benefits is analogous to embezzlement income, which the Supreme Court has held to constitute income to the embezzler in the year of the embezzlement. James v. United States,366 U.S. 213 (1961). Accordingly, the payments from the welfare board petitioners received during 1979 are includible in their gross income. 3. Unemployment Compensation
Mr. Frempong-Atuahene applied for and received unemployment compensation benefits from the Commonwealth of Pennsylvania for the period beginning February 3, 1979 and ending September 8, 1979, despite the fact that he was *75 employed by Penn Mutual Life Insurance Company from June 4, 1979 through August 1, 1980. For the period February 3, 1979 through June 3, 1979, the time during which he was unemployed, he received benefits totaling $ 2,720. For the period beginning June 4, 1979 and ending September 8, 1979, the time during which he was employed, he received benefits which totaled $ 2,080. Section 85 generally provides that if the sum of a taxpayer's adjusted gross income and the unemployment compensation received exceeds the base amount ($ 25,000 for individuals filing joint returns in 1979), gross income includes the lesser of (a) the unemployment compensation received or (b) one-half of the excess of adjusted gross income and unemployment compensation benefits over the base amount. Sections 85(a)(1), (a)(2), and (b)(2). Unemployment benefits received when one is gainfully employed are not unemployment compensation within the intendment of section 85. Thus, the section 85 limitation is inapplicable to the portion of the unemployment benefits petitioners received while Mr. Frempong-Atuahene was employed. *76 As such, the amount of the payments petitioners received from the Commonwealth of Pennsylvania while Mr. Frempong-Atuahene was employed ($ 2,080) is includible in gross income. See James v. United States,366 U.S. 213 (1961). Petitioners received wage and interest income in the amount of $ 25,470 during 1979 in addition to the $ 393 in illegally obtained welfare benefits and $ 2,080 in illegally obtained unemployment compensation. Thus, petitioners' adjusted gross income for 1979, excluding the legally obtained unemployment compensation, totals $ 27,943. Petitioners' adjusted gross income plus the legally obtained unemployment compensation is in excess of the base amount of $ 25,000. Since the amount of legally obtained benefits ($ 2,720) is less than one-half of the excess of unemployment compensation benefits plus adjusted gross income over the base amount, the entire amount of legally obtained welfare benefits is also includible in petitioners' gross income. Sections 85(a)(1) and (a)(2). 4. Child Care Credit
Petitioners claimed a child care credit in the amount of $ 400 on both their 1977 and 1978 returns with respect to alleged employment-related *77 expenses in connection with the care of Mr. Frempong-Atuahene's son, Ben, who was then between the ages of 10 and 11. During 1977 and 1978, Mr. Frempong-Atuahene worked days at MassachusettsLife Insurance Company, Aetna Life Insurance Company, and Colonial Penn Group Data Corp. Mrs. Frempong-Atuahene worked nights (from 11:00 p.m. to 7:00 a.m.) at Digital Equipment Corporation during 1977 and part of 1978. Mrs. Frempong-Atuahene was not employed outside the home between June 8, 1978 and December 31, 1978. Mr. Frempong-Atuahene stated that Ben attended public school, but that the child care provider stayed with Ben from noon or 3:00 p.m. to 5:30 p.m. or 6:00 p.m. or 7:00 p.m. because Ben was required to go to counseling and to attend special classes. Petitioners allege that they paid cash during 1977 and 1978 to two individuals to care for Ben. These two individuals were also alleged by Mrs. Frempong-Atuahene to be employees of a fictitious corporation, International Travel Corporation (ITC), to be discussed infra at section 7. During 1977 and 1978, section 44A generally allowed a credit in the amount of 20 percent of the expenses for the care of a dependent child outside *78 the home, but only if such expenses were incurred to enable the taxpayer to be gainfully employed. Sections 44A(a), 44A(c)(1)(A), 44A(c)(2). Section 1.44A-1(e), Income Tax Regs., requires that a taxpayer claiming a credit pursuant to section 44A, must substantiate such expenses by adequate records or other sufficient evidence. Petitioners failed to meet their burden of proving that they are entitled to the claimed child care credits. Their testimony was vague and inconsistent, and they produced no documentary evidence to substantiate their claimed child care expenses. Accordingly, we sustain respondent's denial of the claimed child care credits. 5. Moving Expenses
Petitioners claimed a moving expense in the amount of $ 1,670 on their 1978 income tax return. Petitioners moved to Maple Shade, New Jersey on approximately June 8, 1978. However, it is unclear whether petitioners moved from Springfield, Massachusetts or Providence, Rhode Island. Section 217(a) *79 generally allows a deduction for moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee at a new principal place of work. However, to qualify for a deduction of moving expenses, the taxpayer must prove that he was a full-time employee at the general location to which he moved for at least 39 weeks during the 12-month period following the move. Section 217(c)(2)(A). Petitioners failed to present any evidence with respect to the duration of their employment in Maple Shade, New Jersey. Further, even if we were persuaded that petitioners met the time period requirement of section 217(c)(2)(A) (which we are not), petitioners produced no documentation to support their unpersuasive, self-serving testimony that the claimed moving expenses were actually incurred. Accordingly, we sustain respondent's denial of the claimed moving expense deduction. 6. Education Expenses
Petitioners claimed a deduction in the amount of $ 6,553 on their 1980 return for educational expenses which allegedly represents the amount of tuition paid by Mr. Frempong-Atuahene to Temple University for courses which, he claims, *80 were taken to increase his skills and his prospects of promotion in his job at Penn Mutual Life Insurance Company. Temple University has no record of Mr. Frempong-Atuahene's enrollment in 1980. Nor does it have any record of his payment to it in 1980. Their records show that Mr. Frempong-Atuahene took courses in the Spring of 1981 and that on March 12, 1981, it received a $ 4,879 check, as proceeds from a student loan on behalf of Stephen Frempong-Atuahene, of which $ 3,755 was refunded to him on March 13, 1981. At trial, Mr. Frempong-Atuahene testified that the deduction, in part, related to two calculus courses which he claims to have taken at a community college at a cost of $ 468. Section 162 allows a deduction for all ordinary and necessary expenses paid or incurred in the taxable year in carrying on any trade or business. Such expenses include educational expenses if the education maintains or improves skills required by the individual in his employment, trade or business. Section 1.162-5(a), Income Tax Regs.
Petitioners failed to prove either that *81 Mr. Frempong-Atuahene took courses at Temple University in 1980 or that he made any payments to Temple University in 1980. Even if we were to accept Mr. Frempong-Atuahene's testimony that he attended a community college in 1980 at a cost of $ 468, petitioners failed to prove that such alleged expenses were incurred to maintain or improve skills required by Mr. Frempong-Atuahene in his employment. Accordingly, we sustain respondent's denial of the claimed educational expense deduction. 7. Business Activities
Petitioners contend that they began a personnel placement business, D.P. Search Group, in August, 1977. They claim to have attempted to locate jobs for their clients by travelling to various companies. Petitioners claim that Mrs. Frempong-Atuahene worked 40 hours per work for D.P. Search Group while Mr. Frempong-Atuahene dedicated 20 hours per week to the business. Petitioners claimed deductions and reported income from D.P. Search Group throughout the years in issue as follows: Total
Total
Net
Year
Income
Deductions
Loss
1977
$  0 $  3,500
$  3,500
1978
1,000
7,672
6,672
1979
4,000
[3] 9,692
5,692
1980
0 14,472
14,472
*82 Among the deductions claimed by petitioners with respect to their alleged business activities was a $ 900 deduction for a television, video cassette recorder and screen which petitioners kept at their apartment. Petitioners also deducted travel expenses. Petitioners attempted to substantiate such expenses by estimating the dates of travel using a cryptic diary maintained by Mrs. Frempong-Atuahene in a checkbook. All dates of alleged travel by petitioners, except two days, were weekdays. However, between June 4, 1979 and August 1, 1980, Mr. Frempong-Atuahene used only two floating holidays while employed at Penn Mutual Life. Petitioners also claimed a portion of their rental payments on their apartment as a deduction. During 1978, 1979 and 1980, petitioners and Ben resided in a two bedroom apartment in Maple Shade, New Jersey. Petitioners contend that one of the bedrooms and part of the living room were used exclusively for business and served as the principal office for the business. The apartment was residentially zoned and petitioners' lease required that *83 the apartment be used only as a residence. In addition to D.P. Search Group, petitioners claim to have begun another business, Business Consultants Group (BCG), in 1979. BCG was allegedly formed to engage in computer consulting services. Petitioners reported no income from BCG during 1979, but claimed deductions in the amount of $ 3,510. During both 1980 and 1981, petitioners neither reported income nor claimed deductions with respect to BCG. Neither D.P. Search Group nor BCG maintained a bank account. The expenses claimed by petitioners on Schedule C of their 1977 through 1980 tax returns for D.P. Search Group and BCG consist primarily of entries in round numbers, which petitioners admitted were estimates. Petitioners presented the following documentation with respect to their purported business expenses: the "travel itinerary" contained in a checkbook, which lists only cities, states, and approximate dates of the alleged travel; loan documents and other documents relating to a 1977 Monte Carlo automobile which petitioners contend they used solely in their businesses; a computer printout of addresses of companies; a handwritten explanation of claimed deductions, unaccompanied *84 by receipts; hotel, airline, and rental car receipts with no explanation as to the business purpose of the expenses; and a telephone bill, unaccompanied by any explanation of the business nature of any of the calls. Petitioners maintain that their business records were lost when they were arrested by the Immigration and Naturalization Service (INS) at a hotel room during August, 1981. However, they did not list any business records on an INS document which itemized their personal property at the time of their arrests. On March 1, 1979, prior to his arrest, Mr. Frempong-Atuahene filed a document with INS on which he listed his professional employment as Director of Business Development at ITC. In 1982, Mr. Frempong-Atuahene was convicted for violation of 18 U.S.C. sec. 1001 and 18 U.S.C. sec. 2(b) (1982) for false representations to INS. The convictions arose from Mr. Frempong-Atuahene's false representation to INS that ITC was an organization with net annual income of $ 1,000,000 which intended to hire him. Petitioners claim that ITC is a part of BCG. The address given by Mr. Frempong-Atuahene for ITC was that of the personal residence *85 of the Frempong-Atuahenes. Section 162(a) allows a deduction for all of the ordinary and necessary expenses incurred in carrying on any trade or business. Generally, to be engaged in a "business," the taxpayer must be involved in the activity with continuity and regularity and the taxpayer's primary purpose in engaging in such activity must be for income or profit. A sporadic activity, a hobby or an amusement does not qualify. Commissioner v. Groetzinger,480 U.S. 23 (1987). Whether activities carried on by an individual can be characterized as those of a "business" under section 162(a) is a question of fact. Ford v. Commissioner,56 T.C. 1300, 1307 (1971), affd. per curiam 487 F.2d 1025 (9th Cir. 1973). The documentary evidence presented by petitioners was insufficient to prove that the claimed business expenses were in fact incurred. Moreover, petitioners' testimony with respect to their alleged business activity was vague, inconsistent and not credible. Illustrative of Mr. Frempong-Atuahene's lack of veracity is his application *86 for unemployment compensation on which he certified to the Commonwealth of Pennsylvania, under threat of criminal prosecution, that he was not self-employed between February 4, 1979, and September 1, 1979. Further, neither petitioner revealed self-employment to the Burlington County Welfare Board in their application for welfare benefits during 1979 and 1980. Finally, at least a portion of the travel petitioners claim to have undertaken in pursuit of their business activities was in fact undertaken on behalf of Penn Mutual by Mr. Frempong-Atuahene. In light of the above, we find that petitioners failed to prove that they were carrying on a trade or business with respect to either BCG or D.P. Search Group during the years in issue. Consequently, all claimed business losses are disallowed. 8. Section 6651(a)(1)
Petitioners claim to have timely filed Federal income tax returns for the years 1977 through 1980. Petitioners claim that Mr. Frempong-Atuahene mailed their 1977 and 1980 returns and that they left their 1978 and 1979 returns with Ben, who in turn gave the returns to the postman during his afternoon deliveries at their residence. After the Internal Revenue *87 Service searched its records for Federal income tax returns for petitioners' 1977 through 1980 taxable years, Mr. Frempong-Atuahene was served with a summons requesting the production of records necessary to prepare petitioners' tax returns for years 1977 through 1980. Mr. Frempong-Atuahene stated that he would need three to six months to gather such records. The allegedly filed 1977 return shows a balance due which Mr. Frempong-Atuahene testified was never paid. The allegedly filed 1978, 1979 and 1980 returns show refunds due petitioners, which petitioners did not attempt to obtain. Mr. Frempong-Atuahene testified he filed New Jersey State income tax returns for 1978, 1979 and 1980; however, New Jersey does not have a record of any returns being filed by petitioners for 1978, 1979 or 1980. Respondent contends that he did not receive petitioners' Federal income tax returns for 1977 through 1980 until January 27, 1986. Section 6651(a)(1) imposes an addition to tax when a taxpayer fails to timely file a return unless such failure to file is due to reasonable cause and is not due to *88 willful neglect. Petitioners bear the burden of proving that the section 6651(a)(1) addition to tax does not apply. BJR Corp. v. Commissioner,67 T.C. 111, 130 (1976); Shomaker v. Commissioner,38 T.C. 192, 202 (1962); Rule 142(a). As stated previously, petitioners were not credible witnesses. They failed to convince us that they timely filed returns for any of the years in issue. They also failed to convince us that their failure to file was due to reasonable cause, and not due to willful neglect. Accordingly, we sustain respondent's determination as to the section 6651(a)(1) addition to tax. 9. Section 6653(a)
If any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations, the 5 percent addition to tax under section 6653(a) is imposed on the entire underpayment. The section 6653(a) addition to tax is presumed correct unless the taxpayers present sufficient evidence controverting its applicability. Luman v. Commissioner,79 T.C. 846, 860-861 (1982); Bixby v. Commissioner,58 T.C. 757 (1972); *89 Rule 142(a). Negligence, within the meaning of section 6653(a), is the lack of due care or a failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). Petitioners failed to present any evidence to rebut respondent's determination that the underpayments were attributable to negligence. We, therefore, sustain respondent's determination with respect to the addition to tax under section 6653(a). 10. Section 6654(a)
In general, section 6654(a) mandates an addition to tax where prepayments of tax, either through withholding or by making quarterly estimated tax payments during the year, do not equal the total liability required under the statute, unless the taxpayer comes within one of several exceptions not applicable herein. Section 6654; Grosshandler v. Commissioner,75 T.C. 1, 20-21 (1980); Estate of Ruben v. Commissioner,33 T.C. 1071, 1072 (1960). Although certain amounts were withheld from petitioners' wages, such amounts do not *90 meet the prepayment requirements of section 6654(a), and an underpayment of estimated tax has occurred. Accordingly, respondent's determination with respect to the additions to tax under section 6654(a) is sustained. To reflect the foregoing and concessions by respondent, Decision will be entered under Rule 155.
Footnotes
1. Respondent computed the amounts of the deficiencies using married-filing-separately rates. In his brief, respondent conceded that the amount of the deficiencies should have been computed using the more favorable married-filing-jointly rates. ↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedures.↩
3. At trial, petitioners stated the amount of deductions for 1979 should be $ 8,692, rather than $ 9,692.↩