JOSEPH EDWARD HARDY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hardy v. Commissioner
Docket No. 8140-88
United States Tax Court
T.C. Memo 1990-557; 1990 Tax Ct. Memo LEXIS 629; 60 T.C.M. (CCH) 1110; T.C.M. (RIA) 90557; October 25, 1990, Filed *629 Decision will be entered under Rule 155. Joseph Edward Hardy, pro se. Edward J. Laubach, Jr., for the respondent. RUWE, Judge. RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies and additions to tax in petitioner's Federal income taxes as follows: Additions to Tax
Year
Deficiency
Sec. 6651(a)(1) [1]
Sec. 6653(a)
Sec. 6654(a)
1977
$  5,063
$ 1,266
$ 253
$ 180
1978
7,148
1,787
357
207
1979
16,145
4,036
807
677
1980
9,787
2,447
489
623
Additions to Tax
Year
Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1981
$ 5,519
$ 1,380
$ 276
50 percent of
the interest due
on $ 5,519
1982
1,078
270
54
50 percent of
the interest due
on $ 1,078
Year
Sec. 6654(a)
1981
$ 423
1982
106
After concessions by the parties, [2] *631 the issues for decision for each of the years in issue are: (1) Whether the statute of limitations bars respondent from assessing and collecting deficiencies and additions to tax; (2) whether petitioner qualifies as a tax exempt organization; (3) assuming that petitioner does not qualify *630 as a tax exempt organization, whether petitioner earned unreported income; (4) whether petitioner is entitled to certain itemized deductions; (5) whether petitioner is entitled to business expense deductions; (6) whether petitioner is entitled to a parsonage allowance; (7) whether petitioner may claim personal exemptions for his wife and children; and (8) whether petitioner is liable for additions to tax as determined by respondent pursuant to section 6651(a)(1) for failure to file tax returns for each of the years in issue, section 6653(a) for taxable years 1977 through 1980, and section 6653(a)(1) and (2) for the taxable years 1981 and 1982 for negligence or intentional disregard of rules and regulations, and section 6654(a) for failure to pay estimated income taxes for each of the years in issue. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Brighton, Pennsylvania when he filed his petition in this case. Petitioner attended Geneva College in Beaver Falls, Pennsylvania and, in 1959, graduated with a degree in English. Petitioner worked as a real estate salesman for the Bob Garvin Agency, Inc., of Beaver, Pennsylvania during the years 1977, 1978, and 1979, and earned real estate commissions in the amounts of $ 19,839, $ 2,637, and $ 815, respectively. Petitioner was the president and treasurer of Equipment Manufacturing Services, Inc. (EMS), a subchapter S corporation. He controlled the books and records of EMS and had sole authority to sign EMS's checks. During EMS's taxable years ended November 30, 1978, 1979, and 1980, respectively, petitioner *632 held 60, 64, and 89 percent of the stock in EMS. Petitioner received consulting fees from EMS during each of the years 1978 through 1982. On its income tax returns, Forms 1120S, for the taxable years ending November 30, 1978, 1979, and 1980, EMS deducted $ 25,000, $ 54,276, and $ 29,858, respectively, as compensation for petitioner's services. EMS did not file income tax returns after the taxable years ended November 30, 1980, and filed for bankruptcy in June 1982. Petitioner received $ 2,000 as a commission from the McGraw-Hill Book Company during 1982. Petitioner failed to file Federal income tax returns and failed to make estimated tax payments for the years in issue. On January 26, 1988, respondent issued a notice of deficiency to petitioner and determined deficiencies for the years 1977 through 1982. Respondent based the notice of deficiency on the following determination of income, losses, and personal exemptions: 1977 1978 1979 1980
Consulting Fees
--   $ 25,000 $ 54,276 $ 32,150 Real Estate Commissions
$ 19,839 2,637 815 --   1120S Loss
( 2,944)
( 6,079)
(15,849)
( 5,538)
Interest Income
78 --   --   --   McGraw-Hill Commissions
--
--   --   --   Personal Exemption
--
(   750)
( 1,000)
( 1,000)
Total
[3] *633 $ 16,923 $ 20,808 $ 38,242 $ 25,612  1981 1982
Consulting Fees
$ 18,075 $ 4,200 Real Estate Commissions
--   --   1120S Loss
--   --   Interest Income
--   --   McGraw-Hill Commissions
--   2,000 Personal Exemption
( 1,000)
(1,000)
Total
$ 17,075 $ 5,200 Petitioner was married during all of the years in issue. Petitioner's spouse received interest income of $ 39 in 1977 and earned $ 62 in 1981 from EMS. During the taxable years 1977 through 1982, petitioner had four children: Joseph Kirk Hardy born in 1959, Brian Thomas Hardy born in 1960, Susan Eileen Hardy born in 1961, and Janet Lynn Hardy born in 1962. Petitioner provided over half of his children's support for each of the years in issue, except that he did not provide such support for Joseph Kirk Hardy during 1982. OPINION Issue 1. Statute of Limitations
Respondent mailed a statutory notice of deficiency to petitioner on January 26, 1988. Petitioner argues that because the notice of deficiency was mailed more than three years after the date on which his returns would have been due, respondent is barred from assessing and collecting a deficiency under section 6501(a). Generally, section 6501(a) prohibits assessment of a deficiency after three years from the date *634 the return is filed. Section 6501(c)(3) provides an exception to this general rule. Section 6501(c)(3) states that "In the case of failure to file a return, the tax may be assessed * * * at any time." Petitioner failed to file a return for each of the years in issue. Thus, the exception in section 6501(c)(3) applies and respondent is not barred from assessing and collecting deficiencies and additions to tax for any of the years in issue. Issue 2. Tax Exempt Organization
Section 501 exempts certain enumerated organizations from taxation. Petitioner argues that he is a church and, as such, he is tax exempt. In order to qualify as a tax exempt organization under section 501(c)(3), petitioner must satisfy two tests: the organizational test and the operational test. Sec. 1.501(c)(3)-1(a), Income Tax Regs.Under the organizational test, the organization must be organized exclusively for one or more exempt purposes. In order to satisfy the organizational test, the articles of organization must: (1) limit the purposes of the organization to one or more exempt purposes and (2) not expressly empower the organization to engage, other than as an insubstantial part of its activities, in *635 activities which in themselves are not in furtherance of one or more exempt purposes. Sec. 1.501(c)(3)-1(b), Income Tax Regs.Under the operational test, the organization must be operated exclusively for one or more exempt purposes. Sec. 1.501(c)(3)-1(c), Income Tax Regs. An organization fails the operational test "if more than an insubstantial part of its activities is not in furtherance of an exempt purpose" or if any of the organization's "net earnings inure in whole or in part to the benefit of private shareholders or individuals." Sec. 1.501(c)(3)-1(c)(1) and (2), Income Tax Regs. The words "private shareholder or individual" refer to persons having a personal and private interest in the activities of the organization. Sec. 1.501(a)-1(c), Income Tax Regs.Petitioner bears the burden of proving that he has satisfied the regulatory requirements of section 501. Rule 142(a). Petitioner has failed to prove that either the organizational test or operational test is satisfied. Prior to trial and pursuant to Rule 72, respondent requested that petitioner produce any documents reflecting the organization and operation of the church. Petitioner objected to producing the requested documents *636 on the grounds that the documents were privileged and that production of the documents violated his constitutional rights. On January 6, 1989, respondent filed a motion to compel responses to respondent's interrogatories and request for production of documents or to impose sanctions under Rule 104. On January 10, 1989, this Court ordered petitioner to either serve on respondent answers to the previously unanswered interrogatories and produce the documents requested by respondent, or file a reply with the Court stating adequate justification for the failure to comply with respondent's requests. Petitioner then complied with portions of respondent's discovery requests, but continued to refuse to produce any documents reflecting the organization or operation of his purported church on the grounds that it would violate his religious rights under the First Amendment. We then held a hearing on respondent's motion for sanctions at which time it was apparent that petitioner was not prepared to turn over the requested documents or to introduce them at trial. As a result, this Court imposed sanctions under Rule 104 and precluded petitioner from introducing any evidence on the organizational *637 aspects of the church. Thus, there is no evidence indicating whether petitioner's church was organized exclusively for one or more exempt purposes. In addition, the evidence presented at trial does not prove that the church operated exclusively for tax exempt purposes. In fact, the evidence shows that funds which petitioner argues belonged to the church were used to benefit petitioner and his family. Consequently, petitioner fails both tests prescribed under the regulations issued pursuant to section 501. Southern Church of Brotherhood v. Commissioner, 74 T.C. 1223, 1226-1229 (1980). [4]
Issue 3. Unreported Income
Respondent determined that during the years in issue, petitioner *638 earned income from four sources: consulting fees paid to petitioner by EMS, real estate commissions, commissions from McGraw-Hill, and interest income. Petitioner disputes respondent's findings as to income from EMS and the real estate commissions. Respondent's determination is presumed correct, and petitioner bears the burden of proving otherwise. Welch v. Helvering, 290 U.S. 111, 115 (1933); Rule 142(a). (a) Real Estate Commissions
Forms 1099 filed by the Bob Garvin Agency, Inc., indicate that petitioner earned real estate commissions for the years 1977, 1978, and 1979 in the respective amounts of $ 19,839, $ 2,637, and $ 815. Petitioner does not dispute the amounts reflected on the Forms 1099 submitted for 1978 and 1979. Petitioner does dispute the amount reflected on the 1977 Form 1099. Petitioner testified that he received some of the income reported on the 1977 Form 1099 in 1976. He presented no other evidence to corroborate his testimony. We are not required to accept petitioner's self-serving testimony. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Petitioner has failed to prove that respondent's determination of income earned by petitioner from the Bob Garvin Agency, *639 Inc., in 1977 is incorrect. (b) Equipment Manufacturing Services, Inc. Respondent contends that petitioner earned compensation from EMS for the years 1978 through 1982. EMS was a subchapter S corporation in which petitioner was a majority shareholder, president, and treasurer. Respondent determined petitioner's income for the years 1978 and 1979, based on the Schedules E (Compensation of Officers) which were attached to EMS's corporate Forms 1120S for taxable years ended November 30, 1978 and 1979. These Schedules E reflect compensation paid by EMS to petitioner. Petitioner, under penalties of perjury, signed these Forms 1120S. For 1980, respondent determined petitioner's income from EMS by reference to petitioner's compensation as reflected on the Schedule E attached to EMS's 1980 Form 1120S. However, because petitioner was a calendar year taxpayer and EMS's tax year ended on November 30, respondent subtracted EMS checks cashed by petitioner in December 1979 from the amount reflected on the 1980 Schedule E, and added EMS checks cashed by petitioner in December 1980 to the amount reflected on the 1980 Schedule E. [5] In 1981 and 1982, EMS did not file income tax returns. For these *640 years, respondent determined petitioner's taxable income from EMS on the basis of checks written on EMS's account to "cash expenses" and cashed by petitioner. Petitioner presented no credible evidence to dispute respondent's findings. We find that petitioner did not prove that respondent's determination of taxable income from EMS was incorrect. Accordingly, we hold for respondent on this issue. Issue 4. Itemized Deductions
Petitioner claims that he is entitled to itemized deductions for interest expenses on his home mortgage, other interest expenses, local taxes on real estate, State sales taxes, and other local taxes. Deductions are a matter of legislative grace, and petitioner bears the burden of proving his entitlement to any claimed deduction. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Rule 142(a). Respondent conceded that petitioner was entitled to interest expense deductions for interest paid on petitioner's mortgage loan. On brief, respondent also conceded that *641 petitioner was entitled to sales tax deductions based on the amounts shown in the sales tax tables for each year. With respect to other deductions to which petitioner claims entitlement, petitioner offered no evidence except his own self-serving testimony. Petitioner has failed to carry his burden of proof. Accordingly, except as conceded by respondent, we hold for respondent on this issue. Issue 5. Business Expense Deduction
At trial, petitioner argued that he was entitled to business expense deductions for expenses incurred in connection with the sale of real estate. Petitioner testified that these expenses equalled 10 to 15 percent of the real estate commissions he received. This figure was not based on actual expenses incurred by petitioner. Rather, petitioner based his claim for business expense deductions on what he understood to be the average expenses incurred by a real estate agent. Petitioner presented no evidence to indicate what expenses he incurred in connection with the sale of real estate. Petitioner has not met his burden of proof. Accordingly, we hold for respondent on this issue. Issue 6. Parsonage Allowance
Petitioner claims that he is entitled to exclude *642 the rental value of his home from income. Petitioner argues that this amount qualifies as a parsonage allowance and is excludable under section 107. Petitioner's argument fails for at least two reasons. First, section 1.107-1(a), Income Tax Regs., requires that the rental allowance be paid to a minister for performance of services which are ordinarily the duties of a minister of the Gospel. In the instant case, petitioner was paid for selling real estate and consulting EMS, not for services which are ordinarily the duties of a minister. Second, section 1.107-1(b), Income Tax Regs., requires that a parsonage allowance paid to a minister be officially designated as a parsonage allowance prior to payment. See also Holland v. Commissioner, T.C. Memo. 1983-717. Nothing in the record indicates that such a designation was ever made. We therefore reject petitioner's contention that he is entitled to the section 107 exclusion and hold for respondent on this issue. Issue 7. Dependency Exemption
Petitioner claims he is entitled to personal exemptions for his wife and four children for the taxable years 1977 through 1981, and for his wife and three of his children for the taxable year *643 1982. The rules for claiming personal exemptions for spouses and dependents are different, and we will treat each type of exemption separately. Section 151(b) allows a taxpayer an exemption for his spouse if: (1) The taxpayer and his spouse do not file a joint return, (2) the spouse is not the dependent of another taxpayer, and (3) the spouse has no gross income for the calendar year in which the taxable year of the taxpayer begins. If the spouse has any gross income during this period, even though not a sufficient amount to require her to file a return, the taxpayer is not entitled to an exemption for her. Sec. 1.151-1(b), Income Tax Regs.
Petitioner failed to prove that his spouse did not earn gross income during the years 1977 through 1982. In fact, the record reflects that petitioner's spouse received at least $ 39 of interest income in 1977 and $ 62 from EMS in 1981. In short, petitioner fails to meet his burden of proof on the issue of whether he may claim his wife as an exemption. In order to claim a child as a personal exemption, a party must demonstrate that the child qualifies as a dependent, and (1) that the child has not attained the age of 19 at the close of the calendar *644 year in which the taxable year of the taxpayer begins or (2) that the child is a student and has not attained the age of 24 at the close of such calendar year. Sec. 151(e). In order for a child to qualify as a dependent, the taxpayer must provide over half of the child's support. Sec. 152(a). Petitioner testified that during the years 1977 through 1981, all four of his children were either under the age of 19 or under the age of 24 and a full-time student. Petitioner testified that in 1982, his oldest son, Joseph Kirk, was no longer a full-time student and had attained the age of 19. Petitioner also testified that he provided over half of his children's support during these years. We accept petitioner's testimony on this issue as credible and hold that he is entitled to claim personal exemptions for all of his children for the years 1977 through 1981, and is entitled to claim personal exemptions for three of his children in 1982. Issue 8. Additions to Tax
The final issue for decision is whether petitioner is liable for additions to tax pursuant to section 6651(a)(1) for each of the years in issue, section 6653(a) for taxable years 1977 through 1980, section 6653(a)(1) and (2) *645 for taxable years 1981 and 1982, and section 6654(a) for each of the years in issue. Section 6651(a)(1) imposes an addition to tax upon a taxpayer who fails to file a timely return, unless the taxpayer shows that his failure to file was due to reasonable cause and not due to willful neglect. Petitioner failed to file Federal income tax returns for the taxable years 1977 through 1982. Thus, petitioner is liable for the additions to tax under section 6651(a)(1), unless he can show that his failure to file is due to reasonable cause and not willful neglect. Whether failure to file is due to reasonable cause is essentially a question of fact, and the burden of proof is on petitioner. Horton v. Commissioner, 86 T.C. 589, 597 (1986); Baldwin v. Commissioner, 84 T.C. 859, 870-871 (1985); Shomaker v. Commissioner, 38 T.C. 192, 202 (1962); Rule 142(a). Petitioner argues that he did not file his tax returns for the years 1977 through 1982, because he believed that he, individually, qualified as a religious organization under section 501 and was therefore tax exempt. At trial, petitioner testified that he briefly spoke to an accountant and that the accountant told him that a church would *646 not need to file for exempt status. The accountant did not tell petitioner that his church was tax exempt. This conversation allegedly occurred before 1970. On brief, petitioner made vague references to IRS publications and argued that these publications also led him to believe that he qualified as a tax exempt organization. Reviewing the record as a whole, we find that petitioner's failure to file his income tax returns for the years at issue was not due to reasonable cause. The conversation which petitioner referred to only indicated that religious organizations did not need to obtain IRS approval prior to receiving tax exempt status. The record does not reflect that the accountant, or anyone else, told petitioner that he, individually, could qualify as a tax exempt organization. The IRS publications vaguely referred to by petitioner cannot, as far as we can discern, reasonably be interpreted to suggest that an individual, whose primary activities are selling real estate and consulting businesses, can qualify as a tax exempt religious organization. Moreover, petitioner admits that he was familiar with section 501. A reading of section 501, and the regulations promulgated thereunder, *647 can only lead to the conclusion that petitioner, individually, could not qualify as a tax exempt organization. We have held that taxpayers who deliberately fail to file a return must use reasonable care to ascertain that no return is necessary; and, in the absence of obtaining competent advice, the erroneous belief that no return was required does not constitute reasonable cause for failing to file. Shomaker v. Commissioner, 38 T.C. at 202. See also N.Y. Assn. of Real Est. Bd. Group Ins. Fund v. Commissioner, 54 T.C. 1325, 1336 (1970). In the instant case, we find that petitioner did not obtain competent advice or otherwise exercise reasonable care to ascertain that he was not required to file tax returns. Respondent also determined that petitioner is liable for the additions to tax under section 6653(a) for negligence or intentional disregard of rules and regulations. Negligence, for purposes of section 6653(a), has been defined as the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Under the facts in this case, petitioner clearly had an obligation to file returns and pay taxes for each *648 of the years in issue. An ordinarily prudent person would have made a more careful investigation into the law before deciding that he or she did not have to file returns or pay taxes for six consecutive years. Reviewing the record as a whole, we find that petitioner failed to sustain his burden of proof on this issue and find in favor of respondent. Finally, respondent determined that petitioner is liable for additions to tax under section 6654(a) for underpayment of estimated tax for the taxable years in issue. The addition to tax under section 6654 is mandatory, unless the taxpayer can place himself in one of the computational exceptions provided for in subsection (d) thereof. Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980); Estate of Ruben v. Commissioner, 33 T.C. 1071, 1072 (1960). In the instant case, none of the exceptions apply. Thus, we hold for respondent on this issue. After concessions by the parties, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. At trial, petitioner conceded that he earned $ 2,000.00 in commissions from the McGraw-Hill Company. Petitioner also conceded that he received $ 78.00 in interest income in 1977. On brief, respondent conceded that petitioner only earned $ 39.00 in interest income in 1977. Respondent also conceded that petitioner is entitled to interest expense deductions for the interest paid on petitioner's home mortgage for the years 1977 through 1982 in the amounts of $ 1,650.97, $ 1,996.83, $ 2,640.00, $ 3,033.83, $ 2,996.64, and $ 2,370.29, respectively. Respondent also conceded that petitioner is entitled to sales tax deductions in the same years based on the amount shown in the sales tax table.
3. This figure is incorrectly shown in respondent's notice of deficiency. The correct figure should be $ 16,973. However, it should be noted that this amount was reduced by concessions made by the parties. See supra↩ note 2.
4. In addition to failing to satisfy the regulatory test, petitioner has also failed to prove that the statutory requirements of section 501 are satisfied. Specifically, section 501(c)(3) requires that the tax exempt organization be organized as a corporation, community chest, fund, or foundation. Hilburn v. Commissioner, T.C. Memo. 1981-737. Petitioner testified that his organization was not organized in any of these forms. Thus, the statutory requirements of section 501(c)(3)↩ are not satisfied either.
5. Respondent's agent testified that these adjustments to the amounts reflected on the EMS returns were not made for prior years because she was unable to obtain sufficient records for those years.↩